McFarland, J.,
delivered the opinion of the Court.
This is a proceeding under the Code, in the *429 Chancery Court at Charlotte, to have the defendant declared an idiot, lunatic, or person of unsound mind.
The writ was issued in the proper form and an inquest instituted, and the jury found “the defendant, James J. Fentress, to be a person of unsound mind from his infancy, without mental capacity to manage and control his property and manage his affairs, on account of mental weakness and imbecility,” etc.
Upon the return of the inquest, a motion was made on behalf of defendant to set aside the finding of the jury, upon which the Chancellor proceeded to examine the evidence taken before the jury, and being satisfied with the finding adjudged as follows: “That said defendant James J. Fentress is a person of very weak and unsound mind; that his weakness of mind and want of mental capacity amounts to or borders on idiocy, and that on account of this weakness of mind and idiocy he is wholly unable and incompetent to attend to the management and control of his estate, or to take proper care of, and provide for the wants of, his person,” etc., and the Court thereupon appointed a guardian to take charge of the estate of the defendant, and gave the necessary directions for the execution of this trust. To reverse this decree this writ of error is prosecuted.
Several errors or irregularities in the proceedings have been assigned.
1. That the counsel of the defendant proposed to ask one of the jurors if he had not formed an opinion, but the Clerk and Master presiding at the in *430 quest, would not require the juror to answer the question,. and held him competent.
2. That the proper oath was not administered to the jury, they being sworn to well and truly try all matters in controversy properly arising under the bill, and especially to try the matter as to the capacity or incapacity of the defendant James J. Fentress to manage and control his matters of business, and to render a true verdict, etc.
3. That the defendant was not examined by the jury, as required by the statute, etc., and other objections not necessary now to be mentioned.
The Code provides in relation to proceedings of this character, that either party may appeal at the first term after the return of the inquisition, and move the Court to set it aside. Sec. 3703.
Upon this motion, the Court shall hear the evidence, and the examination of the defendant, as taken down and returned by the Clerk and Master, and also such other affidavits as may be' competent and proper, and the Chancellor may, upon such motion, grant or refuse a new trial. Upon setting aside the verdict of the jury, the Chancellor may, at his discretion, order another inquest to be held, or decree upon the facts.
Ve think that upon a proper construction of these provisions, this Court should not reverse for mere errors or irregularities, and order an inquest de novo, provided the statute has been substantially complied with, and provided the facts so clearly appear from the evidence as to enable the Court without difficulty to reach the justice of the case and decree accordingly.
*431 1. Does tbe statute absolutely require that an examination of the defendant shall be taken in writing, and does a failure to do this vitiate the whole proceedings and make it necessary to order an inquest de novo?
The Code, 3697, provides that “both parties shall have process of subpoena and attachment if necessary, to be issued by the Clerk, to compel the attendance of witnesses, and the jury shall hear the testimony offered and inspect and examine the defendant himself in making the verdict.” Sec. 3698 is as follows: “The testimony of the witnesses, and the examination of the defendant made, shall be taken down by the Clerk in writing and returned with the verdict to the Chancellor in court.”
The record shows that the inquest' was held in the presence of the defendant, that counsel appeared in his behalf and .cross-examined the witnesses, and offered evidence in his behalf. The jury show that they did inspect the defendant, but it does not appear that any statement or examination of the defendant was made or taken down in writing. We think that under a proper construction of these clauses with reference to the facts of this case, unless a statement or examination of the defendant was offered by him or upon his behalf, the failure of the jury to take such examination does not make it absolutely necessary to direct an inquest de novo.
Upon the hypothesis of the defense, that is, that the defendant is compos mentis, being present himself, he or his counsel may be supposed to have *432 known whether a statement from him would aid his view of the case. Ve think that if a statement of the defendant had been offered in his behalf, the jury would have been bound to receive it, and the Clerk to take it down in writing, and return it to the Chancellor with their verdict; and furthermore that the jury might in their discretion have done this upon their own motion, but unless they saw fit to do so, and unless it was offered, it does not follow that a valid verdict or decree of the Chancellor might not be founded upon the other evidence, provided it were satisfactory. We do not deem it important to examine the other alleged errors or irregularities in the proceeding, although we do not regard them as difficult, for they could at most but amount to reasons for setting aside the verdict and granting a new trial, and as we have seen, in doing this the Chancellor might either order another inquest or decree upon the facts.
We understand the Chancellor to found his decree upon the facts which were proven, and which appear in the record; and if these facts satisfactorily appeared we cannot say he was in error in ascertaining them for himself, instead of ordering an inquest de novo, or in refusing to set aside the verdict found to be well sustained by the proof.
We think the facts satisfactorily appear in the record. A large number of witnesses well acquainted with the defendant were examined and cross-examined, and we think the character of his mind was fully developed. The defendant is clearly not an idiot, in the sense of that term as ordinarily used. It is *433 shown that he can read and write, and has some knowledge of arithmetic. Also that he observes the ordinary proprieties of life, and conducts himself with decency and propriety. That he has a wife and two children. It further appears that he has considerable skill; can nail on a horse shoe; make and hang a gate; make a rough shoe: he gives some attention to minor matters of business; attends to his own riding horse; sometimes attends to other stock; purchases small articles at the stores; and when sent by others, can remember and call for what he has been sent for. He is saving of money and will not waste it.
He is not a lunatic; his mind has been in about the same condition from his infancy.
It has been held that our Chancery Court acquires its jurisdiction upon this subject alone under the statute; it has no general jurisdiction upon the subject. 10 Hum., 254. The statute before referred to gives the jurisdiction. The writ directs the Sheriff to summon twelve freeholders to meet at a day and place designated by him, to inquire and ascertain by their verdict whether the defendant be an idiot, a lunatic or person of unsound mind. The form of the writ prescribed for the County Court directs the Sheriff to enquire, by the oath of twelve freeholders, etc., whether the defendant is an idiot, lunatic, or is otherwise of unsound mind, so that he has not capacity sufficient for the government of himself and his property, and if so, from what time, in what manner, and how, etc.
This seems to contemplate three classes of cases— *434 idiots, lunatics, and persons of otherwise unsound mind, so that they have not the capacity for the government of themselves and property. The question is, does this defendant fall within the last class. The difficulty consists in defining what this unsoundness of mind means, and ascertaining whether the defendant’s mind falls within that definition. It is certainly true, as argued for the defendant, that courts can not undertake to declare men of unsound mind because they fail to manage their business with skill and success.
Perhaps in reality, no question is more difficult than to ascertain the state and condition of the human mind. Their variety and shades are infinite. The boundary line between sanity and insanity is often of the most shadowy character, but it is as a practical and legal question that we have to examine it, and not as a metaphysical question.
We think the Legislature intended to include within the term “persons of unsound mind” all those who have not the possession of reasoning faculties so as to enable them to understand and act with discretion in the ordinary affairs of life. 2 Kent, 564.
If it be shown that the party has not this understanding — is not, in the language of the statute, of capacity sufficient for the government of himself and property, then he is entitled to this protection of the law, and it is immaterial to inquire to what particular class of mania or mental insanity his case belongs; he comes under the general definition of a person of unsound mind.
What then are the facts of this case? This de *435 fendant is shown to be in possession of real estate worth some $30,000, and of personal estate worth some $8,000. Has he the capacity to govern himself and this property? It is shown that he never attempts to make any contract or trade of any importance. When applied to he refers the parties to his wife or some one else, and it seems to be now understood by all his acquaintances, that no one is to attempt to make any such contract with him. By common consent, it is understood among those who know him, that it is not proper to make any trade of any consequence with him in the absence of his wife. When he goes to the store he sometimes buys a few small articles upon his own account, but generally buys only what he is sent for. He sometimes takes some little interest in the business of his farm and the protection of his property, but this, it seems, is only to a limited extent.
He associates with boys and those who were formerly slaves; he is quiet and manifests but little intelligence in conversation. It does not appear that he has a knowledge of the value of property, and while it does appear that he is not utterly devoid of reason, yet for all the practical purposes of the management of himself and his estate he is held to be non compos mentis by the almost universal judgment of his acquaintances.
We do not mean to say that the defendant is utterly devoid of reason, or that he might not lawfully contract marriage, and possibly he might have capacity to purchase for his own benefit some small articles, or *436 necessaries of life, but we think it does very clearly appear that he has not the capacity to govern ,with even the smallest amount of reasonable discretion the property he owns.
Shortly before the institution of these proceedings, to-wit: on the 29th July, 1870, the defendant executed a deed conveying everything he owned or possessed to his wife and children, reserving a support to himself.
This deed upon its face bears the strongest evidence of the utter imbecility of the defendant. It recites: “My wife is kind to me and takes good care of me, and is just as attentive to my .wants as a wife can be, and my object in making this conveyance is to put her in possession of all my property, and rid myself of all trouble and responsibility of the same, she being better able to take care of it and control it than I am; and if from any cause hereafter arising a . divorce should be obtained by either of us, it is not in the least to interfere with this conveyance/’ etc., etc.
It can hardly be supposed that, under ordinary circumstances at least, a man of sound understanding would execute such a paper as this.
It is objected that as the statute only gives the Chancery Court jurisdiction where the estate of the defendant exceeds $500, in this cause .the Court has no jurisdiction, as the deed shows that he had no estate at all. This would only be so upon .the supposition that at the time the deed was made the defendant was compos mentis, but we hold he was non *437 compos mentis, and for the purposes of this case the deed is void. We do not say that those who are not parties to the cause are hound by this adjudication.
We think the facts of the case very clearly show that the law and the best interests of the defendant and his family require that he and his property shall be placed under the protection of a guardian; that no good purpose can be subserved by incurring the expense of going through the form of another trial by jury.
The decree of the Chancellor in so far as it adjudges the defendant an idiot will be reversed. The defendant will be adjudged “a person of unsound mind, without capacity for the government of himself and his property,” and the appointment of the guardian confirmed.
The costs will be paid by the guardian out of the funds of his ward.