## A. H. WOOD v. H. M. WINSLOW.

Eastern Section.   October 31, 1925.

Certiorari denied by the Supreme Court February 12, 1926.

1. **Dismissal and nonsuit. Dismissal of a suit in accord with compromise does not divest court of jurisdiction to investigate as to fraud or to determine if attorney has lien.**

    Where action was dismissed by court on request of parties in accord with compromise and later at same term order of court was amended so as not to affect the right of the attorneys for their liens for services and case was continued, held the court had not lost jurisdiction so as to defeat an investigation as to whether or not anything had been received in the compromise to which the statutory attorney's lien would attach.

2. **Attorney and client. Client cannot defeat attorney's statutory lien by dismissing case.**

    Where parties compromised case and dismissed it in accord with compromise held attorney entitled to file a petition to have court investigate

compromise and declare a lien on property obtained by client in compromise. In instant case held nothing passed to which lien could attach.

3. **Attorney and client. Statute giving attorney lien for services does not give him right to proceed with case against client's wishes.**

Shannons Code, section 3592a1 & 2 giving attorney a lien for his services does not give him such an interest in the case that he may proceed against clients wishes.

4. **Courts. Jurisdiction. Court held not to have jurisdiction to determine amount of fees of attorneys which are not taxed as costs in the case.**

Where the case was dismissed by the parties and attorneys then filed a petition in the original case to have their fees determined and declared a lien against property in the case and the parties were by the court required to answer but were not served with process, held court had no jurisdiction to determine the amount of fees but only had jurisdiction to declare a lien upon the recovery by decree or compromise and preserve record evidence of it.

Appeal from Chancery Court, Morgan County; Hon. W. R. Officer, Chancellor.

Affirmed.

Frantz, McConnell and Seymour, of Knoxville, and R. B. Cassell, of Harriman, for appellant.

J. B. Sizer, of Chattanooga, for appellee.

SNODGRASS, J.   This controversy is presented through the medium of a petition filed in the above styled cause by R. B. Cassell and Davis & Davis, who were attorneys for complainant in the said cause, in connection with the firm of Smith, Word & Anderson, who were the leading counsel.

In the midst of the progress of the said original cause, and before final decree therein, it was compromised and dismissed; but upon application of said attorneys, at the same term, and upon suggestion that there had been a recovery, upon which they were entitled as attorneys for complainant to assert a lien, it was retained in court, and the order of dismissal was so far modified as to permit them to make the question, and to include the settlement of such questions in said original cause.

At the next term of said court a formal petition was filed in said cause, in which it was averred that petitioners, Davis & Davis, a law firm composed of Charles H. Davis and J. M. Davis, and R. B. Cassell, were practicing lawyers, the said Davis & Davis at Wartburg, and the said R. B. Cassell at Harriman, Tennessee; that they were solicitors for complainant in the said above styled cause, along with L. D. Smith, of Knoxville, Tennessee; that they rendered valuable services to the complainant, A. H. Wood in said suit; that said cause had been tried and had resulted in a recovery in favor of the complainant therein of a one-half interest in what is known as the Fisher lands of about 1600 acres located in Morgan county, Tennessee, which lands, it was averred, are fully set out and de-

scribed in the pleadings and decrees in said cause, to which reference was made, and such description made a part of the petition; that the said lands recovered was worth at least $100,000, and the one-half interest in the same was worth $50,000; that the said services were worth the sum of $10,000, which sum, it was alleged, was just, due and unpaid; that said Winslow, along with said Wood, had attempted to settle said suit, and had not settled with the petitioners; that petitioners were entitled to a reasonable fee, and entitled to have the same declared and fixed as' a lien in the land recovered, and upon any other recovery in the case.

They prayed that they be allowed to file the petition in said original cause, and that said A. H. Wood and H. M. Winslow be required to answer same, but not under oath; that a reasonable fee be allowed petitioners in the cause for their services and be declared a lien upon the property recovered in said cause, the same being a one-half interest in the lands as set out and described in the original bill and decrees in said cause, as well as on any other recovery therein; that if necessary a reference be ordered directing the clerk and master to hear proof and report what would be a reasonable fee for complainant's counsel, the petitioners herein, and that when said amount is fixed and ascertained that petitioners have a judgment for said amount, and that the same be declared a lien upon the recovery had by the complainant in said cause, being a one-half interest in the property described in the original bill and the decrees; and they prayed for general relief.

This petition was allowed to be filed at the November term, 1923, and it was also provided in the order as follows: That "It appearing that said A. H. Wood and H. M. Winslow are both in court, no process need issue as to them, but they are required to make defense in thirty days from this date, and incorporate all defenses in one pleading, so as not to delay the hearing of this petition."

In December, 1923, the defendant Winslow filed his answer. In March, 1924, a pro confesso was taken against defendant A. H. Wood, reciting that said defendant was duly and legally served with subpoena to answer, and that he had failed to appear and make any defense.

At the November term, 1924, petitioners were allowed to amend the petition of record so as to provide that at the end of section 8 of the main portion of the petition, and just before prayer of same, to state as follows: "If the court should be of opinion that complainants are not entitled to the lien upon the interest of A. H. Wood from Winslow in the compromise of this cause, then let the lien claimed by petitioners extend to and cover said property, and same be subjected to payment of petitioners' debt; and to amend the prayer of the petition in section 9 so as to insert in sub-section

b at the end of same, as follows: "Let the proceeds of any prop-erty, or the property itself, if any, that passed between Winslow and Wood, be subjected to payment of any claim petitioners may have."

The sworn answer of H. M. Winslow was filed December 5, 1923, in which it was admitted that petitioners were practicing lawyers as alleged; that it might be true that petitioners were solicitors for the complainant in the above-styled cause, but that L. D. Smith was leading counsel; that as to what services were rendered he was not liable to say; that it was true said cause was tried in the chancery court, but that it was not true that it resulted in a recovery in favor of complainant Wood of a one-half interest in the land referred to in the petition; neither was it admitted that said land was worth $100,000, or that a one-half interest was worth $50,000; that defendant did not know, nor could he admit, that petitioners' services were worth $10,000, or that the value thereof remains unpaid; that it was true that defendant and the said Wood had effected a settlement of all matters in controversy in said cause, and by a decree duly approved and entered in said cause at the May term, 1923, said suit was dismissed; that it was true that the defendant had made no settlement with the petitioners, but that he was advised, and respectfully submits that he is under no obligation to make any such settlement, but that the claim of the petitioners for the value of their services, if they have any, is against their alleged client, the said A. H. Wood.

The answer sets out a reasonably full and fair history of the case, as far as it goes or assumes to do, up to and including the entry of the decree of dismissal, and denies that there was anything paid or passing to said Wood to which any lien could attach. It neither admits nor denies the averment that petitioners are entitled to a reasonable fee for their alleged services on behalf of the complainant, but most positively denies that the petitioners are entitled to have any lien declared against the land of this defendant for their said fees. It was averred in that connection that, as already hereinbefore set forth, the cause was finally dismissed at the May term, 1923; that the jurisdiction of the court over the cause was thereby terminated, and it was insisted that the petitioners could not revive the cause or reinstate it for the purpose of litigating with this defendant questions sought to be raised in their said petition.

Proof was taken, and upon the whole record, together with that offered by the record in said original cause, the case came on for trial before the chancellor at chambers, where it was heard by agreement, who held that the petitioners were not entitled to the relief sought in their said petition, dismissed the same and taxed them and their surety with the costs. From this decree the petition-

ers prayed, obtained and perfected an appeal to this court, and have assigned: That

### I.

"The court erred in dismissing the petition in this case, and in holding that petitioners were not entitled to the relief sought. The chancellor should have rendered a decree against the said Winslow, declaring a lien upon the lands recovered in said cause for the amount due petitioners, to-wit: $10,000, and should have ordered said land sold for the satisfaction of said decree."

### II.

"The court erred in not rendering a decree against the said Winslow for the amount and value of said compromise settlement, same to be satisfied by the payment of petitioners' said fees of $10,000, or such amount as the court should hold to be reasonable."

### III.

"The court erred in not rendering a decree against said A. H. Wood for the amount of said fees due to petitioners."

It is insisted by the defendant Winslow that the court has no jurisdiction to entertain in the original cause this application for investigation of the subject of fees and lien liability; that the agreement to dismiss the cause was made on May 19, 1923, and, as held in the case of Tompkins v. Railroad, 110 Tenn., 157, a dismissal of a suit by agreement in writing either out of term or in term terminates the control of the court over the suit, and the jurisdiction of the court cases, except to render judgment for costs; that the entry of the order of dismissal was on the first day of the May Term, 1923, and that the entry of the order at the instance of petitioners directing that the cause remain on the docket until the following term could not have the effect to retain the cause in court, or give the court authority to make any order therein at the next term.

We do not think this position tenable, because as a matter of fact while the order of dismissal was entered on the first day of the term, it cannot be said to have been entered in the unrestricted form which lost to the court jurisdiction to entertain, if it ever had such power, an application to investigate the dismissal, to see whether or not it involved any fraud or concealment of what might have passed to the complainant as a consideration for such dismissal upon which the attorneys' lien might fasten itself, a jurisdiction not necessary or invoked for the continued prosecution of the suit,

but oftentimes necessary or pertinent for the preservation and security of the lien, if thus seasonably applied for. All orders are within the breast of the court until adjournment of the term, unless there is some statute providing otherwise. It is conceded in the brief that on the same day on which the decree was entered, an order was entered at the instance of Messrs. Cassell and Davis to the effect that nothing in the order dismissing the suit should have the effect to deprive said attorneys of their reasonable attorney's fees, or their right to have same declared a lien on the lands in controversy, and that it was also provided that the cause would remain on the docket until the next term of the court, at which time said attorneys might bring the matter of their fees up for further consideration. "And the order heretofore entered dismissing the bill is modified to this extent; to all of which modification said Winslow objects and excepts." This order, we think, effectually retained jurisdiction to make this inquiry.

Under the statute, Shannon's Code, section 4940, "suits may be dismissing in writing out of term time, as well as in term, and further cost stopped; and if compromised. and dismissed before the return day of the required writ, or before the court to which an appeal is taken from the judgment of a justice of the peace, no costs except the clerk's fee for issuing the writ, and the sheriff's fee for serving it, if served, shall be taxed."

This statute requires out of term time some positive and unequivocal action effecting such dismissal to put an end to the court's authority to do anything but render judgment for costs upon the session following such dismissal. If indeed such a dismissal out of term time could foreclose the right to make any subsequent inquiry looking to the preservation of the security of a lien, such a dismissal was not effectuated in the executory agreement to dismiss, evidencing the compromise in this cause.

In Sharp v. Allen, 11 Lea, 518, Nancy Sharp, one of the sister devisees, had filed her bill against the executor and devisees claiming that the will disposed of a part only of the testator's property, and seeking to hold them liable for the residue of the property, which they had taken possession of under the will. The other heirs and distributees were made defendants to the bill. The devisees demurred to the bill. The chancellor overruled the demurrer, and on appeal his decree was affirmed and the cause remanded for further proceedings. On the remand the plaintiff, Nancy Sharp, entered into a compromise agreement with the devisees, and in accordance with the terms of the compromise she gave to the devisees a written instrument of that date stating the facts and reciting that in consideration of the compromise she dismissed her pending suit and released the devisees and all right of action. On the first day of the

term following this order was presented in writing to the court, and the parties moved to dismiss the suit. On the second day O. C. King, counsel of the complainant in the filing and prosecution of the bill, filed his petition in the case claiming a lien on the property in litigation for his professional services, and resisting a dismissal of the suit on this ground. With other matters the cause was heard on motion to dismiss the petition of King because it did not show the lien claimed. The chancellor overruled the motion. They then demurred to the petition. The demurrer was overruled. The devisees then appealed. The referees reported in favor of an affirmance of the chancellor's decree, but holding that the appeal as to other defendants and as to other branches of the case was improvidently granted; and that while some of them might have an interest which would under other circumstances entitle them to prosecute the suit, the limited character of the appeal did not present the question so that such interest could be made available. As to the petition of King the court held that the petition, conceding on its face that Nancy Sharp had entered into the compromise and executed the written dismissal in question, and stating the facts, rests its equity upon the assertion that by the bill and the proceedings themselves the estate of G. W. Allen was in custodia legis, and that petitioner had acquired a lien on the share of his client in the estate for the payment of his fees. The demurrer of the devisees squarely calls in question the correctness of this assumption. That the bill did not seek to attach any property, nor does it impound the property by injunction or other process; that nothing had been brought actually in custodia legis; that the lien of an attorney for professional services in such case had no existence until declared upon the final recovery; they held that while the counsel had earned and was justly entitled to compensation from his client, he had acquired no lien upon any property which could be enforced against appellants. The chancellors' decree was therefore reversed upon that branch of the case, the demurrer sustained and the petition dismissed.

It is true the court said that by virtue of the act above mentioned the dismissal of a suit in vacation puts an end to the suit and terminates the control over it as fully as if made in term time, and that the jurisdiction of the court over the case ceases except to render judgment for costs, or to make such orders as may be necessary to give effect to the dismissal, and that the dismissal, when approved, relates to the time of its execution, they nevertheless held that the court may investigate the dismissal upon grounds of fraud or other sufficient reasons. See also Stanton & Moore v. Houston, 12 Heisk., 265.

This common-law lien related to a recovery when had, and the dismissal having occurred before any such was effected, the sus-

taining of the demurrer and denial of the application seem to have been placed upon this ground. At any rate the case at bar was not dismissed until court conveyed, and then as effected and modified by the subsequent order only to the extent as to not interfere with the investigation as to the lien; and certainly if a question of fraud might be investigated to defeat a dismissal out of term time, a dismissal in term time could not defeat an investigation as to whether or not anything had been received in compromise of the case to which the statute gives title as well as to the lien. By statute, Shannon's Code, sections 3592a1 & 2, the lien is given, as follows: "Attorneys of record who begin a suit in a court of record in this State, shall have a lien upon the plaintiff's right of action from the date of the filing of the suit."

"Any attorney who is employed to prosecute a suit that has already been brought in a court of record in this State, shall have a lien on the plaintiff's right of action from the date of his employment in the case; provided the record of the case will first be made to show such employment, by notice upon the rule docket of such court, or a written memorandum filed with the papers in the case, or by notice served upon the defendant in the case."

Construing this statute it is held that the statute does not give any lien against the property of the defendant, neither does it undertake to deprive the complainant of the control over his case, nor authorize the continued prosecution by attorneys to effectuate a lien, even where they have a stipulated interest in the recovery.

In the case of Tompkins v. Railroad, 110 Tenn., 157, the attorneys, having stipulated for a certain per centage of the recovery, resisted the application of the plaintiff to dismiss her suit, and sought to be allowed to prosecute the suit to a determination, thus to earn and preserve the lien through the medium of a petition in the case. A demurrer was filed to it, the substance of which was, that counsel's lien on the right of action cannot be enforced so long as plaintiff fails or refuses to prosecute the suit; that plaintiff is alone entitled to prosecute said right of action, and that petitioners are not entitled to be made parties to the action. The court held this contention to be sound; that while "the object of the Legislature in giving an attorney's lien on the right of action was to prevent the compromise and settlement of cases out of court, so as to defeat the collection of fees for professional services rendered, it is not contemplated by the act that suitors should thereby be precluded from managing their cases or dismissing them at pleasure."

Quoting from the case of Railroad v. Wells, 104 Tenn., 707, 59 S. W., 1043, the court said:

"A lien which the statute fixes on the plaintiff's right of action follows the transaction without interruption, and simply attaches

to that extent into which the right of action is merged. If a judicial recovery is obtained, the lien attaches to that. If a compromise agreement is made, the lien attaches to that; and in each case the attorney's interest is such that it cannot be defeated or satisfied by a voluntary payment to his client without his consent. . . . Since the passage of the act, as before, the plaintiff may prosecute, or compromise, or dismiss his suit at will, and the defendant is liable only for such sum as may be adjudged or stipulated in the plaintiff's favor.

Reviewing a number of cases decided before the passage of the act, as well as the Wells case, which was decided later, it was held that the act made no change in this respect, and that the plaintiff had the right, as had been repeatedly held, to dismiss or compromise her suit independent of other issues, and that this right was beyond their control. Justifying such a right the court said:

"Again it would seem that a litigant has a right to say when he will no longer incur the liability of a bill of costs for the prosecution of a suit. If he has no right to control this matter, his counsel can carry him through all the courts and, at the end of a long litigation, leave him mulcted in a heavy bill of costs."

So it would seem that, notwithstanding the length to which the Legislature has gone to extend or create the lien, it yet remains somewhat precarious and dependent, not so much upon the merits of a good case, as upon the good faith or gameness of the client in the prosecution of the case to the point of such stable or irrevocable recovery as places the right of the lien beyond the exigency of a change of mind, or to a point at least where it can be shown that the client has received something by way of compromise; as without such result the most roseate dreams will sometimes fade away as light in the wake of the setting sun, mournfully evidencing the fact that "the best laid plans of mice and men aft gang aglee."

It is quite true, as claimed, that in the first rounds of the contest one of the objects of the bill had been attained, through the verdict of the jury, and that was to find that the defendant, Winslow, was holding in trust a one-half interest in 1600 acres of valuable coal lands, the whole of which the complainant in the original bill had purchased at court sale at the price of $60,000. Yet the bill, conceding an indebtedness to the defendant Winslow of many thousands of dollars for advancements in taking up the purchase money notes that had been executed by the complainant, and for taxes and expenses incurred in relation to the land, and at least another indebtedness of about $9,000 owed by complainant to the defendant, which seems to have been explained as operating as an original inducement, claimed that Winslow had received likewise large sums as royalties, sought an accounting asking that if any sum be found

due the said Winslow that the land be subjected to the payment of such sums, and that the balance be paid to the complainant. The bill also sought and obtained an injunction to stay certain suits which complainant alleged were being prosecuted against him in other states to collect certain judgments, two of which at least, it was claimed, constituted a part of the advancements referred to.

The bill was answered by the defendant, who claimed to own the land in fee simple; that the complainant was indebted to defendant and cross-complainant arising out of said judgments and otherwise in the sum of many thousands of dollars, and the same was filed as a cross-bill to collect these sums.

This cross-bill was answered reaffirming the original bill, etc., and it was in this case, and upon the issues thus formed, that the services of the petitioners were rendered the complainant, and which they insist entitles them to the lien claimed in the petition. These services had been rendered in the prosecution of said suit to the verdict and interlocutory decree.

However, the value of this finding, clinched as it was by the provisions of the interlocutory decree entered in furtherance thereof, depended upon the ability of complainant to finally make good the adjudication, as its effect and extent as a recovery depended upon the result of a reference, which was finally reported to charge it with a balance of $23,802.74, found to be due from the complainant to defendant Winslow. This interlocutory decree was also encumbered with a postponed appeal which, to say the least of it, threatened its entire reversal, coupled with a possible judgment against complainant for somewhere in the neighborhood of $30,-000, accordingly as the revising court might find the facts to be. Exceptions had been taken to the report by both sides, and the next round in the contest was awaiting only the coming term of court, when hostilities were to be resumed and the way cleared, at least for another essay into the appellate courts, through which the bill of review and defense thereon had been litigated in the same case as a result of a futile effort to have the verdict of the jury and decree thereon reviewed, in what was determined to be in the Supreme Court an unorthodox way.

Pending further contest the complainant and defendant got together in Knoxville, Tennessee, and compromised the case by an agreement, which resulted in the certain if not peaceful entry of the following decree of dismissal:

"This cause came on to be heard on this day, and it appearing to the court that all matters in litigation have been fully compromised and settled, by the terms of which compromise it is agreed that H. M. Winslow will pay all of the costs incident to the appeal, and all of the balance of the costs will be divided equally, said Winslow paying one-half and the said Wood paying one-half.

"And by the terms of said compromise the said A. H. Wood forever releases, relinquishes and quitclaims to the said H. M. Winslow all right, title and interest which he may have or may have heretofore asserted in and to the lands in Morgan county, Tennessee, known as the Fisher lands and all contiguous and adjacent tracts purchased for use or in connection with said Fisher lands.

"It is therefore, the judgment of the court that this case be dismissed and that the said parties respectively pay one-half of the costs of this court, as herein provided for, and the said H. M. Winslow will pay all of the costs incident to the appeal."

This order we think terminated the recovery of the land so charged, and any claim asserted by the bill as against the defendant Winslow:

> "As a general rule a discontinuance or dismissal is a final decision of that action as against all claims made by it, and also takes out of the record so much of defendant's answer as makes a defense to the claim stated, except insofar as it sets up a set-off or a counterclaim. A dismissal carries down with it previous proceedings and orders in the action, and there remains no cause pending in which a third person may be permitted to intervene, or in which defendant may thereafter file an answer or plea; nor has defendant the right to have the case reinstated, where the answer merely attempts to vary or put a different construction on the subject-matter of the complainant. A dismissal without prejudice filed by the plaintiff is effectual as against a stipulation of dismissal with prejudice obtained from plaintiff prior to the dismissal by him." 18 C. J., p. 1170, sec. 59.

Did the complainant receive anything from the defendant as a consideration for or as a result of this compromise? Manifestly he got nothing except the cancellation of the defendant's claim of liability against himself, which we think, in the light of the record in said original cause, was no small achievement; and that all of his attorneys have rendered yoeman service in the establishment of this result, though there appears to be nothing upon which to fasten a lien, except the cancelled obligations of their insolvent client. However, this suit may have gone far in the settlement of these obligations and have placed him on the high road to responsibility; which makes it material to determine the question first as to whether or not the petitioners in this suit are in an attitude to insist upon a personal judgment as against their client, and if so as to the amount of such judgment; otherwise, or if found not to be in such attitude, it will neither be necessary or proper to pass upon the question of the amount. It is proper to state that these attorneys were originally employed before the bringing of the suit, though their names do

not appear to be signed to the original bill. However, it does appear that the names of John M. Davis, and of Cassell & Harris, petitioner Cassell's law firm, are signed as attorneys for complainant to the exceptions to the master's report. Mr. Cassell states that his name also appears upon the docket and upon certain briefs filed in the case. It also appears that the name of John M. Davis was signed to the assignment of error in the appellate court to the action of the chancellor on the bill of review, and it appears also from the proof that they were employed by the complainant Wood before the bringing of the suit, and that they as such attorneys rendered valuable services in the case. This makes their employment to appear by the record, and we think entitles them to a lien, if there was anything upon which to execute it. But we do not think the order of the court requiring defendants to the petition to answer within thirty days without process had the effect of requiring the defendants to answer anything other than what might have been legitimately done or effected in the original case, which was to declare a lien upon the recovery, whether it be by decree or compromise, for the reasonable fee of the attorneys, and if anything had been paid require the same paid into court, or an amount sufficient to cover such fees, had the amount been agreed upon. The parties were sui juris, and this was not the kind of a case where an allowance could be made by the court for fees to be taxed as a part of the costs of the cause. Good practice would forbid litigating within the bowels of this case matters not originally involved, necessitating a continuance of the case on the docket to await the determination of a possibly protracted litigation. It is true that had there been personal service of process the case might have been treated as an original suit for a recovery of the fees, and for the enforcement of the lien upon anything to which it might have been found applicable, and in which the incidental jurisdiction of the court in the original cause to ascertain and declare it would have been valuable by way of effecting a public record of the same; but as stated, without any voluntary entry of the appearance of the defendant to such petition, the court could not by its simple order place the defendant under any obligation or obtain any jurisdiction over him to litigate questions of original instance in the pendng case. Such jurisdiction is obtained in another way, through the medium of a subpoena to answer.

In other words, the jurisdiction to declare a lien, and thus preserve record evidence of it, so that it might not be defeated by a levy or transfer to innocent parties, was entirely proper as incidental to the original cause; but the question of determining the amount of the fees, unless it were a case where such fees could be allowed and taxed as a part of the costs of the cause, and the enforcement of

such lien were not incidental to the original cause, jurisdiction to determine these questions could only be obtained in the regular way, and the order requiring defendant to answer to this extent was simply coram non judice. The regular way for this purpose would have been by subpoena, and the record does not show that any such was ever issued or served.

It is also true that there is a recital in the pro confesso taken at rules that the complainant Wood was served with process, but in this direct attack offered by the appeal there is no more a presumption supporting it than that of any other fact, and it is not shown that any such subpoena was issued or served by a production of the subpoena and the officer's return. Hence we conclude, without reference to the residence of the said Wood, though he was as a matter of fact a non resident, as appears from the original record, that the Chancellor was without jurisdiction to render any personal judgment against him, and it was not error to fail or refuse to do so.

The claim that the complainant had received from the defendant Winslow the sum of $3750 as a part of the compromise is not borne out by the proof. In fact the proof shows that this was an independent transaction, in no way involved in the settlement of the litigation, though the evidence of this transaction was furnished by the same paper which bore testimony of the compromise. It appears that Wood was the owner of 126 shares of the capital stock of the Tennessee Iron Ore Company, which on the same day he sold to H. M. Winslow, and it was agreed that the same was to be delivered free and unincumbered, and that upon the delivery of said stock, which it seems at that time was encumbered and hypothecated, the said Winslow was to pay the said Wood $750, and to execute three notes dated the day said stock is delivered, for the sum of $1000 each, and due on or before one, two and three years respectively from date, with interest from date at the rate of six per cent per annum.

There was a clause to this agreement that if the said Wood would make an effort to sell the property of the said Tennessee Iron Ore Company, and if he succeeded in bringing about a sale of the stock of said company, or its property, at a price satisfactory to said Winslow agreed to account to said Wood for one-half of the net profits which the said Winslow may recieve on the 126 shares purchased from the said Wood. In arriving at the net profit so received by Winslow interest upon the amount invested by him in said stock so purchased from Wood it was provided should be taken into account, together with any taxes or lawful charges which the said Wood may have paid by reason of his ownership of said stock. It was understood, however, that the said Wood would sell the property or the stock in said corporation subject to its

indebtedness, and that the agreement in no way should interfere with the right of Winslow to negotiate a sale of the property or the stock of said corporation, and that in the event the said Wood shall be unable to make delivery of the Iron Ore stock, as above agreed, that it should in no way interfere with or obrogate the other features of the agreement.

Then follows the compromise and disposition of the litigation, which upon its face, and according to all the testimony, had nothing to do with the trade of the stock. There is no suggestion in the petition of this being any fraudulent arrangement to cover its reception as a part of the compromise, and if there was, the proof is to the contrary.

It results, therefore, that the assignments of error are not supported. They are therefore overruled, and the decree of the Chancellor is affirmed, with costs.

Portrum and Thompson, JJ., concur.