# WILL CUMMINGS v. RAMON G. PATTERSON.
## —388 S.W.(2d) 157.

Eastern Section. January 22, 1964.

Certiorari Denied by Supreme Court December 9, 1964.

Swafford, Jahn & Taylor, Chattanooga, for Will Cummings.

John C. Stophel, Eugene Collins, Chattanooga, for Ramson G. Patterson.

# I

## THE CASE

SHRIVER, J.  We have for consideration a petition for writs of certiorari, supersedeas and mandamus filed by Richard P. Jahn, attorney of the Chattanooga Bar, as a next friend of Will Cummings, an incompetent, who was represented in the cause by the said Richard P. Jahn prior to the time he, Cummings, was declared to be incapable of managing his own affairs by decree of the Chancery Court entered on November 29, 1963. In this same decree the Chancellor appointed Lillian Cummings, wife of the incompetent, as next friend to further prosecute the action.

On December 12, 1963 a proposed compromise and settlement of the case for $300,000.00, which was agreed to and accepted by Lillian Cummings as next friend of Will Cummings, was approved, ratified and confirmed by the Chancellor over the protest and objection of Richard P. Jahn, solicitor of record for complainant Cummings. It is to seek a review of this decree of December 23, 1963, entered nunc pro tunc for December 12, 1963, that the petition herein was filed.

It is alleged that the petitioner, Richard P. Jahn, prayed an appeal from the aforesaid decree but that the Chancellor took the position that Mr. Jahn was not a party in interest who had a right to appeal and, therefore, denied same.

The petition further sets out that a stenographic transcript of the evidence introduced in this case was presented to the Chancellor for authentication as a Bill of Exceptions to be filed with the petition for certiorari and supersedeas, but that the Chancellor refused to sign same, hence a mandamus is prayed to require the Chancellor to authenticate the Bill of Exceptions.

## II

## THE PLEADINGS AND RECORD

The petition herein asserts that petitioner was engaged by Will Cummings to act as his attorney in the above captioned cause and that he has done so throughout the proceedings. And he asserts that he sincerely believes that a miscarriage of justice is about to occur unless this Court intervenes of its own motion or otherwise to review this proceeding and take appropriate steps to protect the best interests of Will Cummings, who was adjudged mentally incompetent by the Chancellor, and who is shown by the record to be a very old and infirm man, having reached his eightieth birthday in 1950.

The cause in question was filed by Judge Cummings seeking to establish a constructive trust in favor of the complainant in the proceeds of the resale of stock purchased from complainant by the defendant. The basis for the action is the contention that the defendant breached a fiduciary duty to complainant in failing to inform him of facts known to defendant but unknown to complainant whereby defendant well knew at the time he agreed to acquire complainant's 50% stock interest in Mountain City Television, Inc., for $87,881.92 and other considerations, that a 30% stock interest in said company could be sold to certain New York interests for $300,000.00 which,

in fact, occurred on January 8, 1957, one day after the closing of the agreement with complainant.

Petitioner avers that, on May 25, 1962, Chancellor Curry orally rendered a sweeping decision in favor of complainant at the conclusion of a lengthy trial of the cause; that in this decision he found that Ramon Patterson had breached a fiduciary duty to Will Cummings when he acquired his 50% stock interest in Mountain City Television, Inc. as above set out.

The petition asserts that the following events occurred, some of which are admitted in defendant's answer and some of which are explained and amplified therein but which, generally, are admitted to be the sequence of events involved.

(1) On January 7, 1957 defendant Patterson acquired Cummings' 50% stock interest in Mountain City Television, Inc. for $87,881.92 plus an additional consideration of $144,386.03 as repayment of certain loans made by Cummings to the corporation and defendant:

(2) On January 8, 1957, Ramon Patterson sold 30% of the stock in the company, traceable to shares that he had originally held and not to shares as acquired from Judge Cummings, for the sum of $300,000.00.

(3) On January 6, 1960, defendant Patterson, along with his wife to whom he had conveyed 116 shares of stock, sold jointly to WSTV, Inc., their remaining 70% interest in the Mountain City Television, Inc., for a principal net sum of $1,426,782.93 payable $413,767.05 cash and the balance in semi-annual installments with interest.

(4) The Clerk and Master after taking proof ruled that Helen Patterson, wife of the defendant, was not an

innocent purchaser for value of the stock she had acquired from her husband and that the claim of complainant Cummings was entitled to priority over her claim. However, no decree was entered by the Chancellor confirming this report or disposing of exceptions thereto.

(5) No decree was entered by the Chancellor implementing his oral opinion announced from the bench on May 25, 1962, although counsel for both parties passed in one or more proposed drafts of such opinion and decree and sought diligently to have it entered. This is also true with respect to several motions filed in the case, action on which were not recorded by decree.

(6) The Court did, however, at the conclusion of the oral opinion of May 25, 1962, enjoin any further disposition of the then outstanding notes for the deferred balance in the hands of Ramon Patterson or anyone in his behalf due from the sale of the stock, without prior Court approval, and this was reduced to a formal decree on November 7, 1962. Each note as it became due was, thereafter, paid into the hands of the Clerk and Master and a balance of approximately $400,000.00 has accumulated as a result of this order, with another approximately $400,-000.00 remaining to be collected, the next installment being due July 6, 1964.

(7) As hereinabove asserted, on December 12, 1963, the Chancellor approved a settlement of the cause on motion of the defendant, concurred in by Lilliam Cummings, next friend of the complainant, for the sum of $300,000.00.

It is asserted by the petitioner that it is his sincere belief that the best interests of complainant, Will Cummings, has not been served by this action of the Court

and that an abuse of discretion has occurred which should be called to the attention of this Court for whatever action it my deem appropriate in fulfilling its historic function of properly protecting and conserving the estates of incompetent persons.

The answer to the petition herein points out that the petitioner, Richard P. Jahn, does not file same as attorney for the duly appointed next friend of Will Cummings but he files same because he objects to the settlement which was agreed to by the next friend Lillian Cummings and which the Court thought was in the best interests of the incompetent.

As was shown by the original bill and answer, together with the various orders in the technical record, and as asserted in the reply of respondent to the petition, certain propositions of fact are said to be true, which facts are in addition to those asserted in the petition as set out hereinabove:

(1) On May 28, 1956 about twenty-two days after the TV station owned by Mountain City Television, Inc., went on the air, Will Cummings who then owned 50% of the stock, wrote a letter to defendant Patterson, who owned the other 50%, stating, in substance, that he would not invest any more money nor extend any more credit, although the new business needed operating capital desperately.

(2) In March 1956 the business lost $3,370.48; in April 1956, its losses were $7,746.93; in May 1956 (the month the company went on the air), the losses were $29,106.55; in June 1956, its losses were $6,711.63; in July 1963, its losses were $14,081.02; in August 1956, its losses were $5,266.22; and in September 1956, its losses were $24,056.73.

(3) In June 1956, Cummings gave Patterson an option for a time certain within which to buy Cummings' stock for a return or all the money that Cummings had invested in the enterprise, plus 5% interest, plus $10,000.00, which was substantially the subsequent formal agreement when Patterson bought Cummings' 50% of the stock.

(4) In October 1956, pursuant to said June agreement, Patterson bought Cummings 50% stock interest and Cummings was to receive for his stock $87,881,92, for his interest in the land $8,889.21; for his loans to Patterson, $3,111.66; for his investment in equipment $29,791.41; and for his loans to the company $102,593.75, or a total of $232,267.95.

The transaction was finally closed on January 7, 1957, when Cummings received from Mountain City Television, Inc., and Patterson $195,267.95 and a note from Patterson for $37,000.00 payable $500.00 a month plus 5% interest.

(5) Patterson then sold 30% of the stock for $300,-000.00, out of which he immediately paid $291,000.00 on the outstanding debts of the Company, and realized only $9,000.00 personally.

(6) By said sale, Cummings realized a return of $232,-267.95 on an investment of $194,941.37 without further risk to his investment. When the $300,000.00 settlement approved by the Court is added, Cummings will have received $532,267.95 on his investment.

It is averred in the answer that Cummings should not be allowed to recover any of the profits made subsequent to the sale by Patterson as a result of the continued risk of Patterson's money and of his efforts, managerial skill, ingenuity and hard work.

## III

## THE DECREE COMPLAINED OF

The decree of the Chancellor which is sought to be reviewed and reversed by the petitioner herein and which decree sets forth rather fully the Chancellor's conclusions of fact and law is as follows:

"This cause came on to be heard on Thursday December 12, 1963, upon the motion of the defendant, Ramon G. Patterson, filed on or about December 6, 1963, that a proposed compromise and settlement for the sum of $300,000.00 cash, plus court costs, offered by the defendant and accepted by the complainant, Will Cummings, and by his wife and next friend, Lillian Cummings, be approved, ratified, and confirmed by the Court; and on the hearing of said motion and argument of counsel, it appeared to the Court that the proposed settlement and compromise was vigorously opposed by Richard Jahn, solicitor for the complainant, upon the grounds that the proposed settlement was wholly inadequate and should not be approved, ratified, and confirmed by the Court despite the acceptance of the offer by the complainant and his wife and next friend, Lillian Cummings; and

"It further appearing to the Court that counsel for the complainant had no intention of introducing any proof whatsoever from the complainant (who is probably too ill and senile to give his testimony even by deposition) or from Lillian Cummings, the next friend of the complainant, the Court on its own motion directed Mrs. Lillian Cummings to take the stand for examination by the Court as to her wishes and desires in the matter; and Mrs. Cummings thereupon testified

that she had been married to the complainant for 37 years; that they never had any children; that the complainant had no children by a prior marriage which had resulted in divorce; that his nearest kin was one living brother of advanced age; that following the death of her husband, she would stand to receive the greater portion of his estate; but despite this fact, both she and her aged husband, Will Cummings, desired that the proposed compromise be ratified, approved, and confirmed by the Court; that this case had been long delayed and dragged out; that it was a source of much worry and concern to her husband; that he desired more than anything to have it concluded prior to his death; that their standard of living would not be varied in the slightest regardless of the outcome of this litigation; and that despite the utmost efforts of counsel for the complainant, Richard Jahn, she and her husband both desired the Court to approve the proposed settlement.

"And it further appearing to the Court that counsel for both the complainant and the defendant were given opportunity to question the witness fully, but that she became even more positive in stating the desire on the part of her husband and herself that the Court approve the proposed settlement since she felt that such disposition of the matter would remove his only source of worry and lengthen his life; and

"It further appearing to the Court that this suit is the cause of action of the complainant, Will Cummings, and not the suit of his counsel of record, and that such counsel has no right to object to any disposition of the case which the client may desire; nor may the counsel, for the purpose of increasing his own fee, gamble on

the outcome of litigation which necessarily would have been appealed to the appellate courts of Tennessee; and

"It further appearing to the Court that the outcome of this case on appeal to the Court of Appeals and the Supreme Court of Tennessee would be a matter of speculation and conjecture, and with it being certain that in the event of a reversal in the appellate court and sent back for a new trial that the complainant, Will Cummings, would either have died or have been so feeble physically and mentally that he would never again be able to testify as a witness in the case; and that in the oral opinion rendered by this Court at the conclusion of a four-day hearing on May 25, 1962, that the Court directed a reference to the Clerk and Master to determine the exact amount of the judgment to be entered in favor of the complainant but that no such reference has ever been submitted to the Court nor even a motion therefor. Wherefore, this Court is of the opinion and holds that the proposed compromise and settlement is reasonable and is for the manifest best interest of the complainant, Will Cummings; it is, therefore,

"ORDERED, ADJUDGED and DECREED by the Court:

"1. That the compromise and settlement for $300,00.00 cash of all the issues now in litigation and all rights or claims that Will Cummings, his heirs or assigns may have against Ramon G. Patterson or Helen Patterson, their heirs or assigns, arising out of, in connection with or relating to the issues in this cause, be and the same is hereby approved as being reasonable and in the manifest best interests of the complainant, Will Cummings.

"2. That the original bill, as subsequently amended, be and the same is hereby dismissed as against the defendant, Ramon G. Patterson, with full prejudice, and all proceedings in this cause against Helen Patterson likewise are hereby dismissed with full prejudice.

"3. That the Clerk and Master shall make distribution of the funds now on deposit with him, at the expiration of 30 days from and after the entry of this order, pursuant to an order of disbursement amendatory hereof, which the Court will subsequently enter. Complainant's portion of the settlement herein approved will be paid by the Clerk and Master to a duly appointed Conservator for the complainant.

"4. That all orders or injunctions heretofore made in this cause shall stand dissolved and for nothing held at the expiration of said 30-day period from and after the entry of this order.

"5. That the defendant, Ramon G. Patterson, shall pay all costs of this cause, and the Clerk and Master may withhold same from the proceeds that will be due said defendant out of the funds now held by the Clerk and Master.

"6. That any and all other questions which may be relevant to carrying out the settlement herein approved be and are reserved.

"This order was made December 12, 1963, and the Clerk and Master is directed to now ENTER it *nunc pro tunc* this the 23rd day of December 1963.

"Clifford Curry /s/

"CHANCELLOR CLIFFORD CURRY."

## IV

## ASSIGNMENTS OF ERROR

The petitioner assigns the following errors;

"1. The Chancellor erred in approving a settlement of this case for $300,000.00 plus costs and holding that such settlement was reasonable and in the manifest best interest of the complainant, Will Cummings, an incompetent. This was error because the settlement was grossly inadequate and manifestly not in the best interest of the estate of the incompetent, being less than one-third of the amount to which complainant, as victorious party, was entitled in this cause, all or practically all of which amount was fully collectible.

"2. The Chancellor erred in overruling all six grounds of petitioner's motion filed January 15, 1964, Tr. 534. This was error because the action of the Chancellor, if sustained, would prevent a review of his discretionary settlement of this case by a higher court to the possible great detriment of the estate of an incompetent ward of the court, and also because a volunteer next friend, as a matter of right, may endeavor to call the attention of any court, as *parens patriae* to incompetents within its jurisdiction, to an injustice believed to have been done to the estate of an incompetent."

## V

## THE ISSUES AND OUR CONCLUSIONS

Counsel for respondent states the issues as follows;

"There seems to be only three principal issues in this proceeding:

"(1) How many 'next friends' can an incompetent have at any one time?

"(2) Does Richard J. Jahn have a right to file the instant Petition and to be heard thereon?

"(3) Was the action of the Chancery Court in approving the settlement and compromise in excess of the Court's jurisdiction, or did the Court act illegally, arbitrarily or fraudulently?"

As we view this matter, we come, in the final analysis, to the question whether the petitioner, Richard P. Jahn, as counsel of record for complainant Will Cummings, or as a next friend of the incompetent, or in any capacity, is entitled to an appeal from the decree of the Chancellor approving and confirming the compromise agreed to by the court appointed and acting next friend of complainant.

The pleadings and the technical record herein raise certain other interesting questions which we will discuss before deciding the question of petitioner's right to seek the relief prayed by him.

■ It should be borne in mind that, as the record now stands before us, we cannot consider the transcript of the testimony and other documents comprising the Bill of Exceptions which has been certified by the Clerk but which has not been authenticated by the Chancellor.

Our consideration of the case is confined to the technical record and the briefs and arguments of counsel.

Assuming, arguendo, that the petitioner, Mr. Jahn, by reason of his interest in the suit, or as a next friend of the incompetent complainant, has the right of appeal or any right to have the final decree of the Chancellor reviewed by the Court of Appeals, we face, first, the question whether or not Certiorari and Supersedeas is the proper method, or is a method available to him.

It is argued by counsel for the respondent that the common law writ of certiorari does not bring up for the determination any question except whether the lower Court exceeded its jurisdiction, or acted illegally, arbitrarily or fraudulently, and that it does not lie to inquire into the correctness of the judgment below where the trial Court had jurisdiction. Citing Hoover Motor Express Co. v. R. R. & Pub. Utilities Commission, 195 Tenn. 593, 261 S. W. (2d) 233 and McGee v. State, 207 Tenn. 431, 340 S. W. (2d) 904.

Section 27-801 T.C.A. provides that the writ of certiorari may be granted whenever authorized by law and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

Section 27-802 T.C.A. provides, ''Certiorari lies: (1) on suggestion of diminution; (2) where no appeal is given; (3) as a substitute for appeal; (4) instead of audita querela; (5) instead of writ of error.''

In Hoover Motor Express Co. v. R. R. & Pub. Utilities Commission, supra, the Court said that it has been expressly held that the distinction between the common law writ of certiorari, Code Sec. 8989 (sec. 27-801 T.C.A.) and the statutory writ in lieu of appeal, Code Sec. 8990 (sec. 27-802 T.C.A.) was not destroyed by the enactment of these later Code Sections. However, they did not operate to enlarge the scope of review under the common law writ. The Court further stated that the writ has never been employed to inquire into the correctness of the judgment rendered where the court had juris-

diction and was, therefore, competent. Hence, it has been held that the supervisory jurisdiction of the Court on certiorari must be restricted to an examination of the external validity of the proceedings had in the lower Court, and cannot be exercised to review the judgment as to its intrinsic correctness either on the law or the facts of the case. In the later case of McGee v. State, supra, the Court referring to an earlier decision in State ex rel. McMorrow v. Hunt, 137 Tenn. 243, 192 S. W. 931, and quoting therefrom, said:

"Without undertaking to define that phrase of the statute with exactness or to say what it includes, we think it clear that the common-law writ, as distinguished from the statutory writ, or certiorari in lieu of appeal, may not be resorted to for the correction of technical or formal errors, not affecting jurisdiction or power, or for the correction of defects that are not radical, amounting to an illegality that is fundamental, as distinguished from an irregularity."

However, these statements of the law by our Supreme Court do not change or overrule the statements in many of our earlier cases to the effect that the writ of certiorari in lieu of appeal ought to be granted where the petition shows that injustice has been done the petitioner, and a reasonable excuse is offered for not having appealed or where the appeal has been defeated or prevented without fault of the petitioner.

There are several cases announcing this proposition beginning with Garrett v. Parryman, 2 Tenn. 108 and including Jones Motor Co. v. Carr, 10 Tenn.App. 179, which is a leading case on the subject.

There is also a long line of cases holding that Certiorari instead of appeal lies where a party has been deprived of the appeal without fault on his part where an appeal lies under the law.

Beginning with McMurry v. Milan, 32 Tenn. 176, 178, and reiterated in Jones Motor Co. v. Carr, supra, it was held that the remedy of Certiorari may be resorted to as a substitute for appeal where the appeal has been defeated by the oppressive or erroneous act of the Court or for several other reasons not necessary here to set out.

■ Hence, Certiorari is available in this Court where a trial Court has denied an appeal to one entitled to appeal.

■ As to the prayer for Mandamus to compel the Chancellor to sign a Bill of Exceptions; Again, if we assume that the petitioner had a right to appeal from the judgment complained of, then, we think this Court does have the power to issue a Mandamus for the purpose of having a Bill of Exceptions sent up, where such a bill has been properly prepared and duly presented but the trial Judge has refused to sign it without giving a good and sufficient reason for his refusal.

In Stargel v. Stargel, 21 Tenn.App. 193, 107 S. W. (2d) 520, the Court in discussing this question said,

"This court has no appellate jurisdiction of mandamus cases, but, in aid of its appellate jurisdiction in other cases, it has inherent power to grant a writ of mandamus to compel a trial judge to sign a bill of exceptions, if the record discloses facts which justify the issuance of the writ."

Petitioner has filed a *motion* in this Court, since the hearing, seeking to have the Petition treated as an appli-

cation for *Writ of Error* and this is objected to by counsel for the defendant who cites as authority, Harmon v. Harmon, 141 Tenn. 64, 206 S. W. 333, where it was held that only a person who is a party and who has a legitimate interest in the subject matter of the law-suit may file for a Writ of Error.

█ In Gibson's Suits in Chancery (Crownover) vol. 2, Secs. 1344, 1346 and notes, it is asserted that a Writ of Error lies from a final decree in all cases where an appeal, or an appeal in the nature of a Writ of Error, would have lain, and this relief is provided by statute, Sec. 27-601 T.C.A. et seq. In several of our cases it has been held that parties are entitled to the writ without reference to the relief they may be able to obtain by it, Ridgely v. Bennett, 81 Tenn. 206 and other cases. But our Appellate Courts have always construed these Code Sections as confining the right of appeal to persons interested or persons aggrieved. See Harmon v. Harmon, supra, and Beasley v. Ferriss, 69 Tenn. 461, where it was said that Writ of Error lies of right where an appeal or appeal in the nature of a writ of error would lie and sometimes where an appeal is properly refused.

However, further discussion of this question is not necessary inasmuch as we have held hereinabove that the remedy of Certiorari is available in a case of this kind provided the party seeking it is one who is entitled to appeal but was denied that right without fault on his own part.

Coming now to the question which we think is determinative of the issue here involved, to wit, Is Richard P. Jahn entitled to maintain this action seeking a review of the Chancellor's decree?

In the first place, no question is made as to the right of the Chancellor to appoint a next friend for complainant, Judge Cummings, after having determined that he was incompetent to attend to his business and affairs, and no question is made as to the propriety of his appointment of Judge Cummings' wife, Mrs. Lillian Cummings, as the next friend to act for him in the litigation.

In Johnston v. John B. Ransom Co., 7 Tenn.Civ.App. 205, it was said;

"We think the Court below, upon the fact of the plaintiff in error's mental incapacity being made to appear by petition or otherwise, would have the power and authority to appoint a next friend for the plaintiff in error to perfect and prosecute his appeal to this Court, and while the order of the Court below appointing plaintiff in error's attorney to perform the service for him, designates such attorney as a guardian ad litem, we think this is immaterial, and this Court will treat him as a next friend of plaintiff in error, and as being properly appointed by the Court below, and will proceed to consider the case on its merits."

It is to be noted in connection with this matter that, as has been pointed out in a number of our cases, the Chancery Court has no inherent jurisdiction of persons or estates of lunatics or persons of unsound mind, but Chancery jurisdiction over such persons is purely statutory. See Fentress v. Fentress, 54 Tenn. 428, Bradford v. Ragsdale, 174 Tenn. 450, 126 S. W. (2d) 327, 121 A.L.R. 1506 and Brewer v. Brewer, 19 Tenn. App. 209, 84 S. W. (2d) 1022.

On the other hand, the jurisdiction of the Chancery Court to deal with the property of minors and to act in

their interests is not dependent upon statute regulating proceedings thèrefor but is inherent in the Court and is more comprehensive than the statute. Smartt v. Smartt, 1, Tenn.App. 68; Carter v. Carter, 144 Tenn. 628, 234 S. W. 764. Thus, the powers and duties of the Chancery Court with respect to persons of unsound mind are not as extensive as its powers and duties with respect to infants and minors.

For example, it is said in Ridgely v. Bennett, 81 Tenn. 206, that any person who will give a bond required by law may sue out a Writ of Error for an infant as his next friend. However, we find no authority extending the right of a stranger to proceed in such manner for a person of unsound mind where such person has either a guardian ad litem or a regular guardian or, as in the instant case, one acting as next friend by appointment of the Court.

In Williams v. Gaither, 139 Tenn. 587, 202 S. W. 917, it was said that a suit might be brought in behalf of a person of unsound mind by a next friend either before or after the inquisition of lunacy *where no guardian or committee had been appointed.* It was also observed that the next friend is neither technically nor substantially a party but resembles a guardian ad litem by whom a suit is brought in behalf of one not sui juris. The Court goes on to state;

"The first suit having been properly brought, what right had the guardian by motion or petition therein to have it dismissed? If, and so long as, the guardian proceeds on the basis of the first suit being wrongfully brought or prosecuted by the next friend, she is to be deemed to be a stranger to that action, and as such

she could not successfully so move to dismiss it. 14 Cyc. 397.''

The Court further said that it is not to be recognized that the guardian may at will, set aside what the next friend has done under the law's sanction, but, that, if the guardian wishes, as a part of her right of control, to dismiss such suit, she must do so by asserting her right of succession to the next friend. The Court stated that the proper course, therefore, was for the guardian to move to be substituted as plaintiff in the first suit. Afterwards she might have dismissed the suit and brought another.

The Court then states;

''While a next friend may in a certain sense be a volunteer in bringing suit, the continuance of the exercise of his function is within the power of the court. It is in the province of the court of pendency, at any time, to inquire into his fitness to represent the interests of the incompetent, and to allow or direct that some one else be substituted in his place. Kingsbury v. Buckner, 134 U.S. 650, 10 Sup. Ct. 638, 33 L. Ed. 1047. A fortiori would the court substitute the guardian to actorship and control, on the motion of the guardian though subsequently appointed. Plympton v. Hall, 55 Minn. 22, 56 N. W. 351, 21 L. R. A. 675.''

It was said in Magevney v. Karsch, 167 Tenn. 32-46, 65 S. W. (2d) 562-567; 92 A.L.R. 343, that where an attack is made upon a judgment or decree of a court of general jurisdiction such judgment .or decree cannot be questioned except for want of authority over the matters adjudicated upon, and this want of authority must be found in the record itself, and that ''In the absence of anything in the record to impeach the right of such court

to determine the question involved, there is a conclusive presumption that it had such a right." Citing cases.

■ A guardian ad litem or next friend has a right to appeal whenever in his opinion it is necessary to protect the interests of his ward. Loftis v. Loftis, 94 Tenn. 232, 28 S. W. 1091.

■ Statute giving attorney a lien for his services does not give him such an interest in the case that he may proceed against his client's wishes. Wood v. Winslow, 1 Tenn. App. 582, where the Court said, quoting from Tompkins v. Nashville, C. & St. L. Railroad, 110 Tenn. 157, 72 S. W. 116, 61 L.R.A. 340.

"The object of the Legislature in giving an attorney's lien on the right of action was to prevent the compromise and settlement of cases out of court, so as to defeat the collection of fees for professional services rendered, it is not contemplated by the act that suitors should thereby be precluded from managing their cases or dismissing them at pleasure."

■ In view of the foregoing, we are of opinion that the Chancellor, acted within his jurisdiction, authority and discretion in entering the decree confirming and approving the compromise settlement of the rights of these parties and in denying the petitioner herein, Richard P. Jahn, the right to intervene and to appeal from this decree.

It results that the petition for Writs of Certiorari and Supersedeas and Mandamus is dismissed at the petitioners costs.

Petition dismissed.

McAmis and Parrott, JJ., concur.