IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 5, 2003 Session

**IN RE: ESTATE OF ERIN MURRAY JONES**

**Direct Appeal from the Circuit Court for Davidson County**
**No. 98P-1344      Frank G. Clement, Jr.**

---

**No. M2002-03073-COA-R3-CV - Filed February 25, 2004**

---

This appeal is from a will contest. The trial court entered judgment according to the terms of a settlement agreement between the parties. Appellants contend they withdrew their agreement to the settlement before approval of the agreement by the trial court. They accordingly submit the agreement is not enforceable. We affirm judgment of the trial court enforcing the terms of the settlement agreement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Carrol D. Kilgor, Nashville, Tennessee, for the appellants, Raymond Burnett and Evie Moore.

John A. Day, Rebecca C. Blair and Vincent Zuccaro, Brentwood, Tennessee, for the appellees, Sonnie E. Potts and Virginia S. Potts.

Michael H. Johnson, Nashville, Tennessee, for the appellant, Mary McGowan.

Jerry Scott, Murfreesboro, Tennessee, for the appellee, Lucy DePriest.

Peggy D. Mathes, Guardian *Ad Litem*, Nashville, Tennessee, for the appellees, minor children.

William L. Harbison, Mark T. Smith, Nashville, Tennessee, for the appellee, Kimberly Ingram.

**OPINION**

Decedent Erin Murray Jones (Ms. Jones) died in August 1998, leaving an estate of over $8 million and five wills executed over a period of twenty-four years. Ms. Jones executed a holographic will in January 1998; identical wills dated June 4, 1996, and October 28, 1996; a will dated 1993;

and a will dated 1974.  Ms. Jones never married, and left no children.  Her heirs at law were her twelve surviving nieces and nephews.

In September 1998, Ms. Jones' heirs and potential beneficiaries under will began this feud over her money, which, unfortunately, she did not take with her.  In September 1998, the 1996 wills were offered for probate by nieces Mary McGowan and Lucy DePriest.  Next of kin and beneficiaries named in the will were served with notice.  Over the next four years, Ms. Jones' heirs waged a protracted and acrimonious battle over which of the five wills was valid.

In November 1999, the court entered default judgments against heirs and legatees who failed to appear or take action in this case, including Appellants (who are brother and sister), their brother, John Burnett, and Kimberly Ingram (Ms. Ingram).  In December 1999, Appellants, Mr. Burnett, and Ms. Ingram  moved the court to set aside the default judgment.  The trial court granted their motion in July 2000.

In April 2002, John Clemmons, then counsel for Appellants, filed a motion to withdraw as counsel for Ms. Ingram based on a conflict of interest.  Upon motion of Ms. Ingram, he was later disqualified as counsel for Appellants.  The matter was scheduled for trial on November 2, 2002.  A pre-trial conference was scheduled for October 21, 2002.  On October 18, counsel for Ms. Ingram notified the court that all parties except Appellants had reached a compromise agreement, and the pretrial conference was converted to a settlement conference by agreement of the parties.  On October 22, Roger Smith (Mr. Smith), counsel for Appellants, notified the court that Appellants had accepted Appellees' offer to settle the case.  Under the settlement agreement, Appellants receive $15,000 each.

Appellants subsequently withdrew their agreement to the settlement, however, and on November 1, Mr. Smith, filed a motion to withdraw as counsel, stating as grounds Appellants' withdrawal of consent to the settlement.  The court held a hearing on Mr. Smith's motion and Appellees' motion to enforce the settlement agreement on November 4.  Appellant Raymond Burnett (Mr. Burnett) attended the November 4 hearing and reaffirmed Appellants' withdrawal from the settlement agreement.  Mr. Burnett stated that Appellants continued to assert the validity of Ms. Jones' 1974 will.  Under this will, Appellants each would receive approximately two percent of Ms. Jones estate.

At the November 4 hearing, the court granted Mr. Smith's motion to withdraw and also granted Appellees' motion to enforce the settlement agreement.  The trial court remarked, "[t]here is no question in my mind that this contest of wills was settled almost two weeks ago . . . on Tuesday, October the 22nd."  The court noted, "I believe that there was a settlement through a judicially sanctioned settlement conference. . . . The court acted in reliance upon the settlements communicated."  The court asked Mr. Burnett whether Mr. Smith had spoken with Appellants about the settlement agreement, and whether they and Mr. Smith had discussed "the pros and cons."  Mr. Burnett testified that they had agreed, but had only one night to consider the offer.  Mr. Burnett requested that the court allow Appellants to obtain new counsel and reschedule the matter.

At the hearing, the trial court heard proof regarding the validity of the 1998 will and admitted that will to probate subject to the provisions of the settlement agreement. On November 14, 2002, the trial court entered judgment admitting the 1998 will to probate and ordering Ms. Jones' estate distributed according to the terms of the settlement agreement.

### *Issues Presented*

The issues raised in this appeal, as we slightly restate them, are:

(1)     Whether the trial court erred by entering judgment pursuant to the settlement agreement where Appellants withdrew their agreement to the settlement.

(2)     Whether the trial court erred by disqualifying Appellants' first counsel, John Clemmons, due to a conflict of interest.

(3)     Whether the trial court erred by applying the Tennessee Rules of Civil Procedure regarding default judgments for non-appearance in a statutory will contest.

### *Standard of Review*

The issues raised in this appeal are issues of law. Our review of a trial court's determinations on issues of law is *de novo*, with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

### *Entry of Judgment on Settlement Agreement*

The pivotal issue before this Court is whether the settlement agreement entered into by the parties was enforceable. Appellants contend they withdrew their agreement to the settlement before it was approved in open court, and that the settlement agreement accordingly was not enforceable. They further argue that, since intestate succession is possible in this case, the consent of heirs at law not participating in this lawsuit is required for distribution other than by intestate succession or provisions of a valid will. Appellees argue that the trial court sanctioned the settlement agreement prior to Appellants' attempt to withdraw their consent. They contend the agreement accordingly was enforceable.

We first address Appellants' argument that the settlement agreement is not enforceable because it was not joined by all potential heirs at law, but only the parties to this litigation. Intestate succession is the default result absent a valid will. The trial court admitted to probate Ms. Jones' most recent will, the 1998 will, subject to the compromise reached by the parties. Other potential heirs at law simply have not contested the validity of this will, and are not parties to this lawsuit. This argument is without merit.

We turn next to whether the trial court erred by enforcing the terms of the settlement agreement notwithstanding Appellants' subsequent withdrawal. Appellants cite *Harbour v. Brown for Ulrich*, 732 S.W.2d 598 (Tenn. 1987), for the proposition that the settlement agreement is not enforceable because they withdrew their agreement prior to approval of the agreement by the trial court. A consent judgment does not reflect the judgment of the court, but merely an agreement between the parties to a lawsuit which has been placed into the record by the court. *Harbour*, 732 S.W.2d at 599. Therefore, although the courts encourage parties to resolve disputes by agreement, generally, the court cannot enter a consent agreement if a party withdraws his consent and communicates his withdrawal to the court before the court enters a judgment. *Id.* The compromise agreement may be enforceable as a contract, but it may not be entered by the court as a judgment when the court knows it has been repudiated by one of the parties. *Id.*

In making this determination, the *Harbour* court quoted 49 C.J.S. *Judgments* § 174(b), which reads: as follows:

> The power of the court to render a judgment by consent is dependent on the existence of the consent of the parties at the time the agreement receives the sanction of the court *or* is rendered and promulgated as a judgment.

*Id.* (emphasis added). Accordingly, in *Rem Enterprises, Ltd. v. Fry*, this Court recognized an exception to the general rule. *Rem Enterprises, Ltd. v. Fry*, 937 S.W.2d 920, 922 (Tenn. Ct. App. 1996)(perm. app. denied). In *Rem Enterprises*, we distinguished *Harbour*, where the settlement agreement had not been read in court and had not been made part of the Technical Record. *Id.* We held that under the circumstances presented in *Rem Enterprises*, where the terms of the agreement were read in open court and the chancellor asked the parties whether they consented to the agreement, the agreement was enforceable notwithstanding subsequent disavowal by the appellant. *Id.*

Thus, under the proper circumstances, a trial court may enter an agreed order notwithstanding the withdrawal of consent by one of the parties before entry of the judgment. *Environmental Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 538-39 (Tenn. Ct. App. 2000)(perm. app. denied). Such circumstances exist at least where the terms of the agreement were presented in open court or hearing, are on the record, and where the terms have been accepted by the court and made part of the record. *Id.* In such cases, the terms of a settlement agreement may be enforceable if the parties agreed to them at the time the agreement was sanctioned by the court, notwithstanding subsequent attempts to withdraw. *Id.*

In the present case, Appellants were not present when the settlement offer was made on October 21, 2002, but were represented by counsel, Mr. Smith, who communicated the settlement offer to Appellants. Appellants accepted the settlement offer, agreeing to settle for a total of $30,000. On October 22, 2002, Mr. Smith communicated their acceptance to opposing counsel and to the trial court. The trial court conferred with counsel for the parties, and confirmed that the matter was settled. The settlement agreement is included in the Technical Record, and clearly was

sanctioned by the court prior to withdrawal by the Appellants. Further, at the November 4 hearing, Appellant Raymond Burnett testified that Appellant and Mr. Smith had discussed the agreement, and that Appellants had given their consent to it.

Appellants clearly understood and consented to the terms of the settlement agreement, which is memorialized in the Technical Record, at the time it was sanctioned by the court. We accordingly affirm entry of judgment pursuant to the terms of the agreement as entered by the trial court.

### *Disqualification of Counsel*

Appellants contend the trial court erred by permitting John Clemmons to withdraw as counsel from this lawsuit. Mr. Clemmons initially represented Appellants and Ms. Ingram in their motion to set aside the default judgment entered against them in November 1999. In April 2002, Mr. Clemmons withdrew as counsel for Ms. Ingram based on a conflict of interest between Ms. Ingram and Appellants. The trial court then granted Ms. Ingram's motion to disqualify him as counsel for Appellants. In their brief to this Court, Appellants argue Mr. Clemmons faced not a conflict of interests, but a conflict of "objectives or loyalties," and accordingly should not have been permitted to withdraw as counsel.

Upon review of the record, we agree with Appellees that Appellants are arguing semantics. Appellants, Ms. Ingram, and the other parties to this action have altered their positions regarding which will to advocate according to individual mixed objectives. Once Ms. Ingram's interests, or objectives, diverged from Appellants, Mr. Clemmons was faced with a professional conflict. He could not simultaneously advocate the validity of different wills. We affirm judgment of the trial court on this issue.

### *The Default Judgment*

Appellants contend the trial court erred by entering a default judgment against them in November 1999. The trial court set aside this judgment in July 2000, however. Thus any error, if such error indeed occurred, was harmless. This issue is pretermitted.

### *Conclusion*

We affirm the judgment of the trial court in all respects. Costs of this appeal are taxed to the Appellants, Raymond Burnett and Evie Moore, and their surety, for which execution may issue if necessary.

_____<br>
DAVID R. FARMER, JUDGE