DENVER AREA MEAT CUTTERS
AND EMPLOYERS PENSION
PLAN, et al.

v.

James L. CLAYTON, et al.

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

April 6, 2006 Session.

May 9, 2006.

Permission to Appeal Denied by
· Supreme Court Oct. 30, 2006.

James J. Hayes, Annandale, Virginia, appellant, appearing pro se.

John T. Winemiller and John A. Lucas, Knoxville, Tennessee, and Edward J. Fuhr, Richmond, Virginia, for the appellees Clayton Homes, Inc., and James L. Clayton, Kevin T. Clayton, C. Warren Neel, B. Joe Clayton, Steven G. Davis, Dan W. Evins, Wilma H. Jordan, and Thomas N. McAdams.

Kevin K. Green, San Diego, California, and Douglas S. Johnston, Jr., and James G. Stranch, III, Nashville, Tennessee, for the appellee Denver Area Meat Cutters and Employers Pension Plan.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

In this appeal, Mr. Hayes, a shareholder of Clayton Homes, Inc., argues that the trial court erred in approving the settlement of a shareholder class action complaint filed by Denver Area Meat Cutters and Employers Pension Plan, *et al.*, also a shareholder of Clayton Homes, Inc., against members of Clayton's board of directors on behalf of Clayton's shareholders. The complaint charged the directors with breach of fiduciary duties in connection with the acquisition of Clayton by Berkshire Hathaway, Inc. and in connection with an associated merger of Clayton and a Berkshire subsidiary. Mr. Hayes contends that the trial court erred in approving the settlement because the trial court did not consider the potential recovery of damages had the case proceeded to trial, because the settlement resulted in a great disparity between the per share recovery of Clayton shareholders and the award of attorney's fees to Denver's counsel, and because the complaint filed by Denver did not include proxy fraud claims or assert Delaware's entire fairness doctrine. We affirm the judgment of the trial court and remand.

### I. Background

In April of 2003, Clayton Homes, Inc. ("Clayton"), a publicly-owned Delaware corporation headquartered in Maryville, Tennessee, disclosed that it had agreed to merge with B Merger Sub, Inc., a subsidiary of Berkshire Hathaway, Inc. ("Berkshire"), another publicly-owned Delaware corporation. Clayton would be the surviving corporation of the merger under the name of Clayton Homes, Inc.

On or around June 16, 2003, Clayton advised each of its shareholders of the merger by a mailing which included a proxy statement and copy of the merger agreement. Also included in this correspondence was notice that a special stockholders' meeting would be held on July 16, 2003, for the purpose of voting on the merger. The merger agreement provided that, upon completion of the merger, Clayton stockholders would be allowed $12.50 per share for Clayton common stock owned. *Inter alia*, the letter stated that Clayton's board of directors recommended approval of the merger and had determined that the terms of the merger were fair to Clayton's stockholders.

The stockholder meeting to vote on the merger was convened on July 16, 2003; however, prior to a formal vote being taken, the meeting was adjourned to July 30, 2003. When the meeting reconvened on July 30, 2003, shareholders voted to approve the merger pursuant to the terms of the merger agreement by an affirmative vote of a majority of all outstanding shares of Clayton common stock.

On July 25, 2003, and by amendment of July 30, 2003, Denver Area Meat Cutters and Employers Pension Plan ("Denver") filed a complaint in the Circuit Court for Blount County alleging both class action claims and shareholder derivative claims on behalf of Clayton against Clayton Homes, Inc. and the pre-merger members of Clayton's board of directors. Among other things, Denver's lawsuit charged that the merger terms were unfair and that, in approving such terms, the directors had breached their fiduciary duties. The complaint requested class certification, damages for breach of fiduciary duty, and an injunction against consummation of the merger.

On August 4, 2003, Denver moved for a temporary restraining order to enjoin ap-

proval of the merger pending review of the July 30, 2003, vote to approve the merger. This motion was denied, and on August 7, 2003, the merger was consummated by the filing of a certificate of merger with the Delaware Secretary of State. On that same date, shortly after the certificate of merger was filed, Denver filed an application for extraordinary appeal pursuant to Tenn. R.App. P. 10, and requested that this Court grant its motion of August 4, 2003, and enjoin approval of the merger.

We granted Denver's application for extraordinary appeal, and on August 7, 2003, Denver, referencing the allegation of fraud in its complaint, argued that the merger had not occurred under an applicable Delaware statute which provided that endorsement upon the certificate of merger by the Secretary of State of the time and date of filing would be conclusive of the time and date of filing "in the absence of actual fraud." After considering the parties' arguments, we remanded for, among other things, a development of the record as to the meaning of this statutory language and as to whether Denver had standing to maintain its derivative action in light of the status of the merger. In addition, we instructed the trial court, should it find that Denver retained standing, to reconsider Denver's motion for a temporary restraining order. We further instructed the trial court to reconsider Denver's motion for a temporary restraining order as applicable to Denver's class action claim, even should the court determine that Denver was without standing to pursue its derivative action.

Upon remand, the trial court concluded that Denver had made a *prima facie* showing of fraud and, consequently, Denver's shareholder derivative suit and class action suit should proceed and a motion by the defendants to stay these suits should be denied. The trial court further restrained the defendants "from any action to change the status quo of the subject merger" pending further court orders. In response, the defendants filed an application for extraordinary appeal.

We granted the defendants' application for extraordinary appeal, and addressed the following issues: 1) whether the merger had occurred and, if so, whether it deprived Denver of standing to pursue a stockholders' derivative action; 2) whether Denver was entitled to a temporary injunction to prevent, in the terminology of the trial court, "any action to change the status quo of the subject merger"; and 3) whether Denver's class action claims should be stayed in deference to other class action claims regarding the merger that were then pending in Delaware.

As set forth in *Denver Area Meat Cutters and Employers Pension Plan v. Clayton*, 120 S.W.3d 841 (Tenn.Ct.App.2003), we concluded that the merger was effective at 7:29 a.m. on August 7, 2003, and that, at that time, Denver lost standing to further pursue its later filed stockholders' derivative suit. We also found that the trial court's status quo injunction constituted, in effect, a temporary injunction. We found no legal authority to support Denver's argument that its allegations of fiduciary fraud were legally sufficient to invalidate the merger. We also noted the test for issuance of a preliminary injunction, as set forth in *S. Cent. Tenn. R.R. Authority v. Harakas*, 44 S.W.3d 912, 919 (Tenn.Ct.App.2000), which includes as one factor "the probability that plaintiff will succeed on the merits," and we stated that "the facts before us do not show that there is a probability that the plaintiff will be successful at trial in its efforts to undo the merger." *Denver Area Meat Cutters*, 120 S.W.3d at 859. Based upon our findings, we vacated the trial court's action to change the status quo of the merger. We

further vacated the trial court's denial of the defendants' motion to stay Denver's stockholders' derivative claims; however, we affirmed the trial court's denial of such motion as to Denver's class action claims and directed that suit as to these latter claims "progress in an orderly manner consistent with the nature of this class action." The case was then remanded for proceedings consistent with our opinion.

Following remand, the defendants filed a motion to dismiss, and Denver filed a motion to amend its complaint. Thereafter, on March 18, 2005, the trial court preliminarily approved settlement of the case. Pursuant to the terms of this settlement, the defendants agreed that, in exchange for release of claims by the settlement class,[1] it would pay the settlement class five million dollars and additional monies contingent upon the sale of Clayton Homes, Inc. by Berkshire Hathaway before December 31, 2005.[2] In addition to approving the settlement, the trial court certified the settlement class, approved the manner and form of the notice of the settlement, and directed that the notice be mailed to all members of the settlement class by first class mail and published in *Investor's Business Daily*. Finally, the court set a hearing for May 16, 2005, "to determine whether the proposed settlement of the Litigation on the terms and conditions provided for in the Stipulation [of settlement] is fair, reasonable and adequate to the Settlement Class and should be approved by the Court...."

The declaration of an employee of the firm retained as claims administrator in the case confirms that 94,713 notices of the settlement were mailed to potential class members. Six notice recipients, including appellant James J. Hayes, objected to the settlement.

At the scheduled hearing on final approval of the settlement, the trial court heard arguments of attorneys for Denver and attorneys for the defendants, as well as the arguments of Mr. Hayes and two other individuals who had objected to the settlement. The trial court also considered the written objections of the three absent objectors. Thereafter, on June 7, 2005, the trial court entered final judgment approving the stipulation of settlement. *Inter alia*, the judgment provides as follows:

This Court has considered the nature of the claims, the possible defenses to the claims, the legal and factual obstacles that would be faced by the Plaintiff at trial, and the delay, expense and complexity of the litigation. *See Cox v. Shell Oil Co.*, Civ. A. No. 18844, 1995 WL 775363, at *10 (Tenn.Ch. Nov.17, 1995). Plaintiff asserted that Defendants breached their fiduciary duties to the Settlement Class in connection with the Acquisition of Clayton Homes by Berkshire Hathaway. Defendants vehemently deny any wrongdoing. Plaintiff faced substantial legal and factual obstacles to going forward, including the opinion issued by the Court of Appeals of Tennessee, at Knoxville, on September 3, 2003. The Appellate Court held: "We find no legal authority to support the plaintiff's position that its allegations of breach of fiduciary duty/fraud in this case are legally sufficient to invalidate a merger that has occurred and will shortly be fully consummated." *Denver Area*

---

1. The settlement defines "settlement class" as "all persons who held shares of Clayton Homes common stock on April 2, 2003 (date of announcement of Acquisition) **and** continued to hold those same shares until August 7,

2003 (date of close of Acquisition)." (Emphasis in original).

2. Such sale did not transpire.

*Meat Cutters and Employers Pension Plan v. Clayton,* 120 S.W.3d 841, 856 (Tenn.Ct.App.2003). Further, the Appellate Court found that "there is not a scintilla of evidence in this record demonstrating that a single vote was incorrectly counted or that any share of stock was voted in favor of the merger because of any alleged fraudulent act of the defendants." *Id.* at 859. Moreover, continuation of this complex case, in light of the vigorous litigation by both sides, would require significant expenses and unduly delay any ultimate recovery for the Settlement Class.

Based upon the foregoing, together with a review of the entire record in this case, and pursuant to Rule 23 of the Tennessee Rules of Civil Procedure, this Court hereby grants Plaintiff's Motion and expressly approves the settlement set forth in the Stipulation. The Court finds that said settlement is, in all respects, fair, reasonable and adequate to, and is in the best interests of, the Plaintiff, the Settlement Class and each of the Settlement Class Members. *See Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir.1983); *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (9th Cir.1982). The Court further finds that the settlement set forth in said Stipulation is fair in view of the risks of continued litigation under the circumstances of this case, especially in light of the risk of success on the merits following the Appellate Court's ruling filed on September 3, 2003. This Court further finds the settlement set forth in the Stipulation is the result of arm's-length negotiations between experienced counsel representing the interests of the Plaintiff, the Settlement Class Members and the Defendants. The Court further finds that the settlement provides substantial value to the Settlement Class. *See Mills v. Elec. Auto–Lite Co.,* 396 U.S. 375, 395–

96[, 90 S.Ct. 616, 24 L.Ed.2d 593] (1970). Accordingly, the Court finds it proper that the aforesaid settlement embodied in the Stipulation be approved in all respects and it is the Order of the Court that the Stipulation shall be consummated in accordance with the terms, conditions, and provisions therein contained. The Settling Parties are hereby directed to perform the terms of the Stipulation. The Court further finds that upon consideration of all objections concerning the fairness, reasonableness or adequacy of the settlement, said objections are without merit and are overruled.

The final judgment further provides as follows for the release of claims against "Released Persons" which are defined in the settlement as "each and all of the Defendants and their Related Parties":

> Upon the Effective Date, the Plaintiff and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against the Released Persons, whether or not such Settlement Class member executes and delivers a Proof of Claim and Release from.

The settlement defines "Released Claims" as "any and all claims, causes of action, demands, rights or liabilities, including both known and unknown claims . . . ."

## II. Issues

Mr. Hayes appeals this judgment and presents for our review three issues which we restate as follows:

1) Did the trial court err in approving the merger without considering the potential recovery of damages had the case proceeded to trial?

2) Should the trial court have denied approval of the settlement because of the

disparity between attorney's fees allowed under the settlement and the per share recovery provided to Clayton stockholders?

3) Did the trial court err in approving the settlement where the underlying complaint omitted proxy fraud claims and failed to assert Delaware's entire fairness doctrine?

### III.  Standard of Review

■■■  The parties do not dispute that this Court properly reviews a trial court's approval of a settlement under the abuse of discretion standard. *See Cummings v. Patterson,* 54 Tenn.App. 75, 388 S.W.2d 157, 167 (1964). In *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn.2001), the Tennessee Supreme Court stated as follows regarding the abuse of discretion standard:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *State v. Scott,* 33 S.W.3d 746, 752 (Tenn.2000); *State v. Gilliland,* 22 S.W.3d 266, 273 (Tenn.2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn.1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 927 (Tenn.1998).

An abuse of discretion occurs when the lower court's decision is without a basis in law or fact and is, therefore, arbitrary, illogical or unconscionable. *State v. Brown & Williamson Tobacco Corp.,* 18 S.W.3d 186, 191 (Tenn.2000).

■■■  In reviewing this case, we also bear in mind, as we recently reiterated, that "'settlement agreements ... are favored by the courts and represent the achievement of an amicable result to pending litigation.'" *Petersen v. Genesis Learning Centers,* No. M2004–01503–COA–R3–CV, 2005 WL 3416303 (Tenn.Ct.App.M.S., Dec. 13, 2005) (citing *In re Estate of Jones,* 154 S.W.3d 582, 584 (Tenn.Ct.App.2004)).

### IV.  Potential Recovery

■■■  The first issue we address is whether the trial court erred in approving the settlement without considering the potential recovery in damages had the case proceeded to trial.

Mr. Hayes argues that "[b]efore a class member or a court can assess the fairness of a particular settlement[,] there must be an estimate of the potential recovery if the case did not settle but proceeded to trial." He asserts that "[c]ourts have no choice but to reject settlements where there is no basis for an evaluation [for fairness]." Mr. Hayes contends that "[j]ust as it is impossible mathematically to solve a single equation with two unknowns[,] it is analytically impossible to assess the fairness of the settlement without good knowledge of the 'potential recovery' from a successful trial." Mr. Hayes cites federal case law in support of this argument. He also references the Private Securities Litigation Reform Act ("PSLRA"), codified at 15 U.S.C. § 78u–4, which he asserts "requires a disclosure of settlement terms to class members that includes a statement on the potential outcome of [the] case." Mr. Hayes maintains that "[i]n a Federal securities case, the Clayton Settlement Notice would violate the PSLRA."

■■■  Although our decisions are controlled by the United States Supreme Court when that Court has held that a particular course of conduct violates the

federal constitution, our decisions are not controlled by the opinions of the other courts of the federal system. *Bowman v. Henard,* 547 S.W.2d 527, 530 (Tenn.1977). Mr. Hayes does not assert that the federal constitution was violated in this case and cites no United States Supreme Court cases in that regard and, while we may, in our discretion, follow the opinions of other federal courts, we are not bound to do so. Furthermore, Mr. Hayes' reference to the PSLRA is inapposite. It is irrelevant whether the Clayton settlement notice would have violated the PSLRA if this had been a federal securities case, in light of the fact that this is *not* a federal securities case. Mr. Hayes presents no Tennessee authority in support of his argument that the trial court was without discretion to approve a settlement absent evidence of potential recovery at litigation.

Even under federal case law, it is acknowledged that a great disparity between the settlement amount and the amount of potential recovery in a class action suit will not determine the fairness of a proposed settlement.

> The dollar amount of the settlement by itself is not decisive in the fairness determination. The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate. Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.

*In re Agent Orange Product Liability Litigation,* 597 F.Supp. 740, 762 (E.D.N.Y. 1984). The court in that case further noted that "[t]he most important consideration [in determining whether a settlement is fair] is the strength of plaintiffs' case on the merits weighed against the amount offered in settlement." *Id. See also Cohn*

*v. Nelson,* 375 F.Supp.2d 844, 853 (E.D.Mo.2005) and *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 932 (8th Cir.2005).

We are not persuaded that an estimate of potential recovery in the event of successful litigation was required as a prerequisite to an approval of settlement under the circumstances in this case, especially in light of the following admission by Denver's attorney at the fairness hearing:

> [D]espite what I think were fairly valiant efforts on the part of the plaintiffs' lawyers, the Court of Appeals finally, in their ruling, disagreed with our view of the evidence and basically substantially eliminated the merits of our case, in our view, had we tried to go forward to trial. Under those circumstances, we were able to obtain not zero for the class, but $5 million for the shareholders and the potential that if the Clayton stock or a substantial portion of the assets are sold before the end of this year, the shareholders will also get some benefit from that.

We do not agree that there would have been any advantage in requiring Denver to produce a statement of potential recovery in the event of successful litigation when Denver stated, in essence, that the merits of its case had been eliminated, that litigation would not be successful, and that nothing would be recovered if the case proceeded to litigation. Given this admission, we cannot imagine how an estimate of potential recovery in the event of successful litigation would have affected the trial court's decision in any way whatsoever, and requiring such would have only resulted in unnecessary cost and further delay in this already protracted case.

## V. *Disparity Between Attorney's Fees and Per Share Recovery*

■ The next issue we address is whether the trial court abused its discre-

tion in approving the settlement despite the disparity between the attorney's fee allowed Denver's counsel and the amount of per share recovery to Clayton shareholders under the settlement.

Mr. Hayes asserts that the settlement results in a net amount to shareholders of $0.067 per share after payment of attorney's fees in the amount of $1.67 million dollars. He states that this Court must determine "whether a settlement that provides both: 1) a low per share payment and 2) guarantees high attorney fees is per se an abusive settlement that should be routinely rejected."

Section 5.2(a) of the settlement states that the settlement fund shall be applied in part "to pay Plaintiff's Counsel's attorney's fees and expenses with interest thereon (the "Fee and Expense Award"), *if and to the extent allowed by the Court."* (Emphasis added). At Section 6 the settlement further provides in pertinent part as follows:

6.1 Plaintiff's Counsel may submit an application (the "Fee and Expense Application") for distributions to them from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) reimbursement of expenses incurred in prosecuting the Litigation, plus interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid).

6.2 The attorneys' fees and expenses, as awarded by the Court pursuant to the application by Plaintiff's Counsel described in 6.1 above, shall be paid to Plaintiff's Settlement Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses. Plaintiff's Settlement Counsel shall thereafter allocate the attorneys' fees in a manner which reflects the contributions of Plaintiff's Counsel to the prosecution and settlement of the Litigation.

. . .

6.4 *The allowance or disallowance by the Court of any award of attorneys' fees and/or expenses is not part of this settlement, and will be considered by the Court following approval of this Stipulation and separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement.* Any order or proceeding relating to the application by Plaintiff's Counsel for an award of attorneys' fees and expenses, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the settlement of the Litigation set forth herein.

We further note that the trial court's final judgment approving the settlement states that "any order entered regarding the attorneys' fee and expense application shall in no way disturb or affect this judgment and shall be considered separate from this Judgment."

Attorney's fees were awarded in the amount of one-third of the settlement fund by separate order entered June 8, 2005, which states, *inter alia,* as follows:

The Court concludes that the percentage of the benefit is the proper method for awarding attorneys' fees in this case. *See Blum v. Stenson,* 465 U.S. 886, 900 n. 16[, 104 S.Ct. 1541, 79 L.Ed.2d 891] (1984). Having reviewed and considered the relevant legal authority, including the factors normally considered in awarding fees in common fund cases, and Plaintiff's Counsel's fee application, the Court concludes that one-third is a reasonable percentage. The Court finds that Plaintiff's Counsel competently and

vigorously represented the Settlement Class, carried the financial burden of litigating the case with the substantial risk of no fee payment, expended considerable time and labor in prosecuting the complex issues raised in this case, and obtained a fair recovery despite the procedural posture of the case. The Court also notes that a one-third fee is consistent with the market rate in other complex contingent cases.

Given the segregation of the award of attorney's fees from the settlement, as evidenced by the referenced language, we cannot agree with Mr. Hayes' statement that the settlement guarantees "high" attorney's fees. In any event, we find Mr. Hayes' assertions that the per share payments were "low" and the allowed attorney's fees in this case were "high" to be subjective and conclusory, and not supported by reference to evidence in the record. Unquestionably, there is a great disparity between the per share recovery under the settlement and the amount awarded in attorney's fees; however, this fact does not of itself indicate that the settlement was "abusive" and should not have been approved, and Mr. Hayes cites no law holding to the contrary. We believe the appropriate point of inquiry is not the degree of disparity between these amounts, but rather whether each particular amount was unreasonable under the circumstances. Our examination of the record before us does not reveal that either of these amounts was unreasonable under the circumstances of this case, and we do not find that the trial court abused its discretion in approving either the settlement or the award of attorney's fees.

## VI.  Proxy Fraud Claims and Entire Fairness Doctrine

The final issue raised in this appeal is whether the trial court erred in approving the settlement of Denver's complaint even though the complaint failed to raise proxy fraud claims against Clayton's directors and failed to assert Delaware's fairness doctrine.

■ Mr. Hayes references the settlement's release of the defendants "from known and unknown violations of any state or federal statutes, rules or regulations that could have been asserted in any other forum based on or related in any way to the Acquisition." Mr. Hayes first contends as follows that the trial court erred in approving the settlement because it released proxy claims against the defendants that Denver should have included in its complaint:

> In the complaint, the Plaintiff alleged that Clayton's directors conspired "to enter into the Merger Agreement with Berkshire Hathaway at an inadequate price and to enter into the stockholder agreement, ... in an attempt to obtain control of the votes required to gain approval of the Proposed Acquisition." If the directors had their doubts about the adequacy of the $12.50 per share price in March 2003, then their statements of opinion on the fairness of that price in the proxy soliciting shareholder votes for the July 15 shareholder vote would have been false and misleading. In addition, the increasing stock prices of manufactured housing stocks would have only increased these doubts, thus making the proxy statements even more misleading and making the proxy claim superior to Plaintiff's breach of fiduciary duty claims. Plaintiff's omission of proxy fraud claims appear[s] designed to avoid federal jurisdiction and the early class certification requirements of the PSLRA. In any event, the trial court breached its duty to the class by approving a settlement that released claims

that were inadequately represented by the Plaintiff.

(Citations to record omitted).

■ Our review of the record shows that, in the proceedings below, Mr. Hayes never argued that Denver improperly failed to include claims for proxy fraud in its complaint or that the trial court should not have approved the settlement for that reason. As we stated in *Hobson v. First State Bank,* 801 S.W.2d 807, 812 (Tenn.Ct. App.1990), "[a]n issue not raised nor considered in the trial court but raised for the first time on appeal will not be considered by this Court." Accordingly, we find this issue to be waived.

■ Mr. Hayes next maintains that the trial court failed to adhere to the so called "entire fairness doctrine" and presents the following argument in that regard:

> The complaint also cites director actions that under Delaware law deprived shareholders of a fair merger process. In making these allegations, however, the Plaintiff ignored a more powerful invocation of Delaware's entire fairness doctrine that is not dependant [*sic*] on director action. In Delaware, mergers with a dominant shareholder standing on both sides of the transaction invoke the entire fairness doctrine that provides a court determined fair price. *Kahn v. Lynch Communication Systems Inc.,* 638 A.2d 1110 (Del.1994). The appellant raised this issue in his written objection and at the fairness hearing. The trial court did not comment on the issue at the hearing or in its *Memorandum* and just with the prior issues breached its duty and discretion in approving the Settlement.

(Footnote and citations to record omitted).

As Mr. Hayes notes, the entire fairness doctrine he seeks to invoke pertains to mergers where there is a dominant share-

holder on both sides of the transaction. However, Mr. Hayes fails to assert that Berkshire Hathaway was a dominant shareholder standing on both sides of the merger. He does not reference, nor do we find, any evidence that would support that conclusion. Accordingly, we do not agree that Delaware's entire fairness doctrine is applicable in this case.

■ Finally, in his reply brief, Mr. Hayes also argues that the trial court abused its discretion because, he alleges, it approved the settlement without evaluating claims set forth in Denver's second amended complaint. It does not appear that Mr. Hayes raised this argument in his original brief.

■ A reply brief allows the appellant to "reply to the brief of the appellee." Tenn. R.App. P. 27. "A reply brief is limited in scope to a rebuttal of the argument advanced in the appellee's brief. An appellant cannot abandon an argument advanced in his brief and advance a new argument to support an issue in the reply brief. Such a practice would be fundamentally unfair as the appellee may not respond to a reply brief." *Caruthers v. State,* 814 S.W.2d 64, 69 (Tenn.Crim.App. 1991). *See also Hobbs v. State,* No. 03CO1–9303–CR–0071, 1993 WL 539494 n. 1 (Tenn.Crim.App. Dec.22, 1993); *Gentry v. Gentry,* No. E2000–02714–COA–R3–CV, 2001 WL 839714 n. 1 (Tenn.Ct.App. July 25, 2001) and *Castle v. State,* 2005 WL 2372762, E2005–00874–COA–R3–CV at *4 (Tenn.Ct.App.E.S. Sept. 27, 2005). Mr. Hayes' argument that the trial court improperly failed to review claims advanced in Denver's second amended complaint is advanced for the first time in his reply brief and, therefore, will not be considered.

## VII. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed, and this

cause is remanded for whatever further action may be necessary as consistent with our opinion herein. Costs of appeal are assessed to the appellant, James J. Hayes.