# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 24, 2012 Session

# LATONY BAUGH, ET AL. v. UNITED PARCEL SERVICE, INC., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 11C2364     Barbara N. Haynes, Judge**

———————————

**No. M2012-00197-COA-R3-CV - Filed December 21, 2012**

———————————

Shortly after the mother of four children was killed in an accident, her husband instituted an action to recover damages for her death; the father of the children moved to intervene in the action and for the court to hold a hearing on whether the husband had abandoned the mother, thereby waiving his right as surviving spouse to participate in the wrongful death action. The trial court did not hold a hearing; rather, it held that the husband was the proper party to pursue the action, allowed the Guardian of the children to represent the interest of the children in the action, and dismissed Father's petition. The surviving spouse, Guardian and tortfeasor subsequently petitioned the court for approval of a settlement of the wrongful death claim; the court granted the petition. Father appeals, contending that the court erred in failing to hold a hearing on the issue of whether the husband was estranged from the mother, in approving the settlement, and in placing the settlement documents under seal. We remand the case for a hearing on whether the husband waived his right as surviving spouse to participate in the wrongful death action and reverse the court's placement of the settlement documents under seal; in all other respects the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in part and Affirmed in part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and FRANK G. CLEMENT, JR., J., joined.

James S. Higgins, Nashville, Tennessee, for the Appellants, James Denzmore.

Dana C. Holloway and David A. Chapman, Knoxville, Tennessee, for the Appellees, United Parcel Service, Inc. and Jason Sanders.

H. Anthony Duncan, Nashville, Tennessee, for the Appellee, Latony Baugh.

David A. Lyons, Nashville, Tennessee, for the Appellee, Guardian and Administratrix, Rachel Welty.

## OPINION

*Factual and Procedural Background*

This appeal arises out of a suit to recover damages for the wrongful death of Roshanda Baugh, mother of four children who were minors at the time of her death ("Mother"). On June 17, 2011, Mother was riding her motorcycle when she was hit and killed by the driver of a UPS vehicle ("Driver"); she died intestate. At the time of the accident, she was married to Latony Baugh. James Denzmore ("Father") is the father of the four children; he was never married to Mother and lived in Illinois at the time of the accident.

Shortly after Mother's death, a proceeding was initiated in Davidson County Juvenile Court by Father, along with Linda King and Marshella Thomas, to have the children declared dependent and neglected. On June 20, 2011, Attorney Rachel Welty was appointed Guardian Ad Litem for the children pursuant to Tenn. Code Ann. § 37-1-150. The dependency and neglect petition was dismissed on August 15, with Father maintaining custody of the children.

Related to the instant proceeding but not at issue on appeal, the record reflects that on June 27, 2011, the Davidson County Probate Court appointed Ms. Welty Administrator ad litem of Mother's estate and Guardian for the children "as it related to their interest in the mother's estate." (Hereinafter, we refer to Ms. Welty as "Guardian.")

Mr. Baugh filed the action which is the subject of this appeal in Davidson County Circuit Court on behalf of himself and the four children on June 20, 2011, asserting that he was "the appropriate person to prosecute the action" for the wrongful death of Mother; he filed an Amended Complaint on June 27. On June 23, Guardian filed a motion to intervene in the wrongful death action; in the motion Guardian asserted, *inter alia*, the following:

> 6. Latony D. Baugh has filed a wrongful death claim on behalf of the minor children, seeking to represent the interests of the minor children.
> 7. The decedent was married to Latony D. Baugh although Roshanda Baugh told her friends and family that the two were divorced. Latony Baugh is not the father of the decedent's four children. James Denzmore, the natural father of the four children is not involved in their lives. He last visited the children in December. He pays little or no child support. He has a problem with alcohol and drugs.

-2-

8. Roshanda Baugh and Latony D. Baugh were estranged. They have not lived together for two years. Roshanda Baugh was prepared to file divorce against Latony D. Baugh.

9. Latony D. Baugh did not support the minor children. He did not act as a stepfather for the minor children, did not provide comfort and guidance for the minor children. He did not work during the marriage. He also abused alcohol and drugs, according to family members.

***[1]

11. Upon information and belief, Latony Baugh has taken personal property belonging to the decedent, and is seeking to abscond with the childrens' birth certificates and social security cards. He has contacted the decedent's employer and is seeking to take her paycheck and retirement accounts. Upon information and belief he is applying for the children's social security benefits. He has demanded the decedent's identification, her vehicle, and a wide screen television and the children's home.

Mr. Baugh filed a response in opposition to the motion to intervene, *inter alia*, asserting the right as the surviving spouse to prosecute the wrongful death action pursuant to Tenn. Code Ann. § 20-5-106(a). Guardian filed a reply to Mr. Baugh's response, in which she asserted that Mr. Baugh and Mother were estranged at the time of the accident, that he provided no support for the children, and that he had been misappropriating assets since her death, including her last employment paycheck and retirement benefits. Attached to the reply was the affidavit of Linda King, a friend of Mother for twenty years, in which she stated in part pertinent to this appeal:

> 10. Latony Baugh and Roshanda Baugh separated more than two years ago. Roshanda threw Latony out because he was having an affair with another woman and gave Roshanda a sexually transmitted disease. They have no children together. He has not supported Roshanda or the children during the marriage, and I don't think he works. He has a criminal record and is currently under indictment for selling crack cocaine.
>
> 11. After Roshanda Baugh died, Latony Baugh immediately went to claim the body. He wanted her truck, her purse, her credit and debit cards. He asked for the children's television off the wall in the apartment. He went to Roshanda's employer, Heritage Nursing Home in Brentwood, to try to get her last paycheck and her 401K.
>
> 12. It would not be in the best interest of the children to allow either Latony Baugh or James Denzmore to represent their interests.

---

[1] There was no paragraph 10 in the Motion

Father filed a motion to intervene in the wrongful death action on July 1, alleging that he had "parental preference" in representing the interest of the minor children; he filed an Intervening Complaint that same day. In the motion, Father also asserted that, at the time of the accident, Mr. Baugh and Mother had been estranged for two years; that, as father of the children, he "is the presumed custodian and guardian" of them; and that, pursuant to Tenn. R. Civ. P. 17.03, he was empowered to sue on behalf of the children. Mr. Baugh filed a response opposing Father's motion, asserting that Father lacked standing to bring the wrongful death action.

On August 9 Father filed a motion for the court to set an evidentiary hearing on the question of who had standing to pursue the wrongful death claim; the motion was heard on September 9. At the conclusion of the hearing the court stated:

> Let me tell you what the Court's going to do. The Court's going to direct that until such time as we have a hearing on [Mr. Baugh's] standing, [Mr. Baugh] is the appropriate plaintiff in this lawsuit under the statute.
>
> Also, the Court's going to rule that the guardian ad litem is the appropriate person at this time, until there's more proof in front of the Court, to represent the children's interests.

The court did not hold another hearing to determine whether Mr. Baugh in fact had standing to pursue the wrongful death action. Rather, on September 21, 2011, the court entered an Order in which it made findings of fact and conclusions of law as follows:

> 1. Mr. Denzmore does not have standing to prosecute this action as he is not one of the affected persons listed in section 20-5-106(a) who may do so;
> 2. Mr. Denzmore's claim is hereby DISMISSED and his motion to intervene is stricken;
> 3. Latony Baugh, as the surviving spouse of the deceased, is the proper party-plaintiff to pursue this wrongful-death action pursuant to section 20-5-106(a); and
> 4. Ms. Rachel Welty, in her capacity as the duly appointed representative of the deceased's minor childrens' collective interests, shall be allowed to participate in the prosecution of this action until this Court rules otherwise.

On October 20 Father filed motions styled "Motion of James Denzmore to Reconsider or for Relief under Rule 59 or Rule 60 With Supporting Authorities To Vacate Order Entered September 21, 2011" and "Motion for Rule 9 Interlocutory Appeal by Permission"; a hearing

on both motions was set for November 4.  On October 28 Father filed his affidavit in which he states in pertinent part:

>    3. I am currently caring for all of my children, both financially and emotionally.  We live in East St. Louis, Illinois.  I am the natural parent of the children and attend to their needs.
>    4. Following the death of Ms. Baugh, I immediately began efforts to ensure my children were being cared for.  Since I lived in another state, I went to the Davidson County  Juvenile Court to inquire as to any documents that could be given to a family friend to have joint power to care for the children until I could reside with them permanently.  I was informed by a Clerk at the Juvenile Court Clerk's office that I needed to file a Petition for Dependency and/or Neglect.  As such, I filed said petition.
>    5. Following the filing of the petition, Ms. Rachel Welty was appointed Guardian Ad Litem.
>    ***
>    8. I understand that my children have an interest in a wrongful death claim involving their mother.
>    9. I understand that I have no financial interest in the wrongful death case involving their mother and make no claim as to such.
>    ***
>    12. At the time of Ms. Baugh's death, her husband, Mr. Latony Baugh, abandoned Ms. Baugh for no just cause he refused and/or neglected to provide for Ms. Baugh while having the ability to so provide.  At the time of Ms. Baugh's death Mr. Latony Baugh was residing with his girlfriend.
>    13. It is my understanding that neither Ms. Welty nor Mr. Lyons has taken any action to prove that Mr. Baugh's claim for wrongful death damages in invalid.  This failure to act or inaction is directly against the interest of my children.

UPS, Mr. Baugh, and Guardian pursued mediation and reached a settlement agreement in the wrongful death action on November 18, 2011; they subsequently petitioned the court for approval of the settlement and distribution of proceeds.  The petition and order approving the settlement are currently under seal.

The court held a hearing on Father's motion for relief from the September 21 order and for an interlocutory appeal on January 6, 2012; both motions were denied by order entered February 10.[2] Father filed a Notice of Appeal on January 19, 2012.

On January 21, 2012, the oldest of the children, Jermeka Denzmore, turned eighteen years old; she joins Father in this appeal as a co-appellant (hereinafter "Appellants"). Appellants articulate the following issues on appeal:

1. Did the trial court err by making a ruling as to who has standing to bring a wrongful death claim without considering any evidence or giving the parties an opportunity to have a hearing on the issue? If so, should this court make a ruling as to whether the estranged husband [Mr. Baugh] or the adult daughter has standing to pursue the claim or should the matter be remanded to the trial court for a hearing on the issue of standing?

2. Is the approval of a minor settlement valid considering the settlement was entered into by the estranged husband of the decedent [Mr. Baugh] and without notice being given to the parent of the minor children [Father]?

3. Should the minor settlement be placed under seal or should the parents and children of [Mother] be allowed to know the terms of the settlement?

## DISCUSSION

*Denial of Evidentiary Hearing on Standing*

Appellants assert that the court erred in denying Father's motion to hold a hearing on the standing issue and in holding that Father lacked standing. The question of whether Mr. Baugh was estranged from Mother is significant in light of the statutory scheme for prosecuting wrongful death actions, as well as in the allocation of the proceeds of the action.

Tenn. Code Ann. § 20-5-106(c), which became effective on May 30, 2011, states:

(c)(1) Notwithstanding any other law to the contrary, the right to institute and the right to collect any proceeds from a wrongful death action granted by this

---

[2] Although the order entered February 10 does not give the basis of the court's ruling, the transcript of the January 6 hearing reflects that the court gave an explanation of its ruling from the bench. We have considered the court's comments in our disposition of this appeal.

section to a surviving spouse shall be waived, if the children or next of kin establish the surviving spouse has abandoned the deceased spouse as described in [§36-4-101(a)(13)[3]] or otherwise willfully withdrawn for a period of two (2) years.

(2) If the period of two (2) years has passed since the time of abandonment or willful withdrawal, then there is created a rebuttable presumption that the surviving spouse abandoned the deceased spouse for purposes of this section.

(3) In an action under this section, the child or next of kin shall serve the surviving spouse with process as provided in the rules of civil procedure or by constructive service as may otherwise be provided by law.

The only evidence in the record regarding this issue are Ms. King's and Father's affidavits. Ms. King states that Mr. Baugh and Mother had been separated for more than two years, and that Mr. Baugh had not supported Mother or her children during their marriage. Father states that Mr. Baugh had abandoned Mother and "refused and/or neglected" to provide for her. These statements provide evidence of abandonment within the meaning of the statute, thus raising the presumption that Mr. Baugh abandoned Mother and, as a consequence, waived his right as surviving spouse to prosecute the wrongful death action and share in the proceeds.

The court should have held a hearing on the question of Mr. Baugh's possible estrangement and allowed Father, as well as others, the opportunity to participate and present evidence on this issue. Counsel for Guardian's statement at the September 9 hearing that Guardian "doesn't have personal knowledge of the length of the estrangement" is not a substitute for a hearing on this matter. The Guardian was able to secure the affidavit of Ms. King and we assume that Ms. King was available and willing to assist in providing information relevant to this inquiry at a hearing called for that purpose. The resolution of this question directly impacts the recovery of the children; it is in their best interest, as well as in accord with the statute, for the court to determine whether Mr. Baugh waived his right to prosecute the action and participate in the distribution of proceeds. Accordingly, we reverse the judgment of the trial court denying Father's motion for a hearing on this issue and remand the case for hearing.

---

[3] Tenn. Code Ann. § 36-4-101(a)(13) defines the ground of abandonment as:

(13) The husband or wife has abandoned the spouse or turned the spouse out of doors for no just cause, and has refused or neglected to provide for the spouse while having the ability to so provide;

*Approval of the Settlement*

Appellants next contend that the court erred in approving the settlement because they were not given notice of the settlement or its terms or of the fact that it was being presented to the court for approval. We do not agree that, under the facts of this case, any failure to notify Father of the fact of settlement and the application to have it approved by the court is reversible error.

We review a trial court's approval of the settlement under the abuse of discretion standard; the settlement will be upheld unless the trial court "applies an incorrect legal standard, or reaches a decision that is against logic or reasoning[.]" *Denver Area Meat Cutters & Employers Pension Plan v. Clayton*, 209 S.W.3d 584, 590 (Tenn. Ct. App. 2006) (citing *Cummings v. Patterson*, 388 S.W.2d 157, 167 (Tenn. Ct. App. 1964)); *Id.* (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)).

As an initial matter, we note that Father's assertion of his parental rights is predicated upon his representation that he is the natural father of the children. While Father's parentage of the children is not an issue in this appeal, there is no indication in this record that he has legitimated the children or that he is entitled to the presumption of parentage at Tenn. Code Ann. § 36-2-304(a)(4).[4] Consequently, we find no error in the Probate Court's and the Circuit Court's appointment of Guardian to represent the interest of the children in matters related to the wrongful death action. *See Gann v. Burton*, 511 S.W.2d 244.[5]

Having been duly appointed, Guardian was vested with the authority pursuant to Tenn. R. Civ. P. Rule 17.03, to "sue or defend on behalf of" the minor children; she then

---

[4] Tenn. Code Ann. § 36-2-304(a)(4) provides:

(a) A man is rebuttably presumed to be the father of a child if:
* * *
(4) While the child is under the age of majority, the man receives the child into the man's home and openly holds the child out as the man's natural child;

The record of the Juvenile Court proceeding is not before us and we do not know if and in what manner this may have been addressed by that court.

[5] ". . . Rule 17.03 requires the trial judge to evaluate the total situation surrounding the infant or incompetent and then, if justice requires, a guardian ad litem must be appointed. However, said appointment is discretionary and this Court will not overrule the trial judge's decision unless there is an abuse of the judge's discretion."

*Gann v. Burton*, 511 S.W.2d 244, 246-47 (Tenn. 1974).

participated in the mediation which led to the settlement and appeared before the court when the settlement was approved. We have reviewed the petition to approve the settlement and order approving it and, subject to the results of the hearing on remand and the concerns set forth below, affirm the trial court's approval of the settlement.[6] In the event the court determines that Mr. Baugh has waived his right to participate in the distribution of proceeds of the action, the parties and the court are empowered to proceed accordingly.

*Placing the Settlement Under Seal*

Appellants lastly contend that the court erred when it ordered that the settlement be kept confidential and placed under seal.

The rule that judicial proceedings, including judicial records, are presumptively open is well established in the Constitution of Tennessee and case law. In *In re NHC - Nashville Fire Litig.*, 293 S.W.3d 547 (Tenn. Ct. App. 2008), this court discussed at length the guarantee at Article I, Section 17 of the Tennessee Constitution that the "courts shall be open":

> Tennessee courts have long recognized that judicial proceedings are presumptively open:
>
> > The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings

---

[6] We hold only that the court did not abuse its discretion in approving the terms of the settlement agreement that was presented for approval; we do not sanction the manner in which this matter was prosecuted and the failure to notify Father of the settlement and court hearing. The action was filed within one week of Mother's death and, as reflected in the Guardian's response to Mr. Baugh's reply to her motion to intervene, caused the Guardian to have to expedite her filings in Probate Court and Circuit Court in order to protect the interests of the children; by necessity, her ability to initially investigate matters relating to Mr. Baugh's relationship with Mother was limited. It is the duty of Guardian to "bring to the trial court's attention all facts bearing upon the fairness of the settlement," and to "investigate into the facts of the incident," thus allowing the trial court to "determine whether the settlement was in the [minor children's] best interest[.]" *Wright v. Wright*, No. M2007-00378-COA-R3-CV, 2007 WL 4340871, at *3-4 (Tenn. Ct. App. December 12, 2007) *aff'd Wright ex rel. Wright v. Wright*, 337 S.W.3d 166 (Tenn. 2011). Further, we discern no reason to fail to notify Father of the settlement and hearing, particularly in light of the fact that, according to the record, he has custody of the children. The court was prevented from addressing any concerns Father may have had regarding the terms of the settlement; in addition, the record does not reflect that the immediate or specific needs of the children were taken into account in approving the manner in which the proceeds were to be paid.

specific enough that a reviewing court can determine whether the closure order was properly entered.

> *State v. Drake,* 701 S.W.2d 604, 607–08 (Tenn.1985) (quoting *Press–Enter. Co. v. Superior Court,* 464 U.S. 501, 506, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)).

> The openness of judicial proceedings extends to judicial records. *See Knoxville News–Sentinel v. Huskey,* 982 S.W.2d 359, 362–63 (Tenn.Crim.App.1998). Indeed, the United States Supreme Court has observed that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 1316, 55 L.Ed.2d 570 (1978) (footnotes omitted).

*In re NHC,* 293 S.W.3d at 560. In *Huskey*, the court discussed the "qualified right of the public, founded in common law and the First Amendment to the United States Constitution, to attend judicial proceedings and to examine the documents generated in those proceedings." *Huskey*, 982 S.W.2d at 362 (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1966).[7]

In weighing the presumption of openness against a protective order providing that certain documents relating to a nursing home fire could be filed under seal, the court in *In re NHC* noted that the reasons for sealing judicial records must be "compelling", with the burden for demonstrating the compelling reason placed on the party seeking to prevent public access to the records. *In re NHC,* 293 S.W.3d at 567. Consistent with this policy, Rule 7.02 of the rules of the Twentieth Judicial District states: "[a]ll papers, documents and files shall be available for public inspection except as specifically exempted by court order or statute." The rule requires that a motion be filed seeking an order of exemption, and that the motion must "contain sufficient facts to overcome the presumption in favor of disclosure."

The record before us contains no motion to have the settlement documents sealed and the court did not enter a separate order stating the reason for sealing the settlement; as a consequence, we have no basis upon which to determine that the reason for sealing the records was compelling. Under the record before us, the trial court abused its discretion in ordering the documents sealed. Accordingly, we reverse the trial court's action of placing

---

[7] In a footnote, the *Huskey* court noted that Article I, Section 19 of the Tennessee Constitution, which guarantees freedom of speech and press, "presumptively extends a similar qualified right to the public." *Huskey*, 982 S.W.2d at 362.

the settlement documents under seal, without prejudice to the filing of a motion in compliance with the applicable law and rule.[8]

*Conclusion*

For the foregoing reasons, the judgment is reversed in part and affirmed in part; the case is remanded for a hearing in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE

---

[8] Assuming there is a valid reason for sealing the documents from view of the general public, we discern no reason why Father is prevented from seeing them.